## PRESCOTT & BOOTH, Appellants, *v.* WELLS, FARGO & CO., Respondents.

Fixture has several distinct meanings.    Sometimes it means anything which is by artificial means affixed permanently to the soil.    Sometimes it is used to designate something which is substantially affixed to the soil, but which may nevertheless be lawfully detached therefrom by one who has so affixed it without the consent of the owner of the soil.    In this opinion the word will be used in the latter and more restricted sense.

It has often been held that fixtures were personal property, and might be recovered in trover.

Pans furnished to a mill owner upon his agreement to pay rent therefor, and by him and the manufacturer attached to the mill and machinery of the same, are fixtures.

If the owner of the mill should sell the mill with the fixtures, this would (under the authorities holding such fixtures to be personal property) amount to a conversion, and he might immediately be sued for such conversion; so the purchaser after demand made of him, and refusal to surrender the fixtures, might likewise be sued in trover and recovery had.

Fixtures, although capable of being lawfully converted into personal property without the consent of the owner of the soil, are in their nature a part of the realty, and should be held and treated as such until actually severed from the freehold.—Per Beatty, C. J.

Trover will not lie for a fixture.—Per Beatty, C. J.

The pleading in this case is good as an action upon contract.—Per Beatty, C. J.

The breach in this case is not exactly in the language of the contract, but seems to be substantially correct.    That breach is not denied in the answer.

There was no necessity of alleging the value of the fixtures.    The plaintiffs only had to allege the extent of the damage they sustained in consequence of not being permitted to remove the same.

The plaintiffs should have been allowed to prove the value of the fixtures they wanted to remove, by way of furnishing the jury with one material fact from which they might estimate the damage which resulted from the refusal to permit the removal.

APPEAL from the District Court of the First Judicial District, Hon. RICHARD RISING, presiding.

The facts of the case, and the main features of the pleadings on which this case was decided are fully set forth in the opinion of the Court.

*C. E. DeLong*, for Appellants.

The Court erred in ruling that appellants could not prove the value of the property at the time of conversion for want of an allegation of value in the complaint. No such allegation is necessary; it is only necessary to aver damage. See form of Declaration in Trover. (2 Chitty's Pleadings, 835; Saunders on Pleading and Evidence, vol. II, part 2, 1144.) As to character of proof to sustain this action, see 2 Greenleaf on Evidence, Sec. 636. As to proof and measure of damages, see Saunders on Pleading and Evidence, vol. II, part 2, Sec. 1162; 3 Burns Just. 68; 2 Greenleaf on Evidence, Sec. 649.

It was wrong to grant a nonsuit; for proof of ownership and conversion entitles plaintiff in trover (and the Court treated this as an action of trover) to a judgment for something. The pleadings admit the ownership and immediate right of possession in plaintiffs. Conversion may be proved either by a wrongful sale or a refusal to deliver on demand.

The nonsuit was equally wrong whether the case be treated as trover or covenant. Everything was proved to sustain the action of covenant except the damages, which the Court would not allow us to prove.

*Sunderland, Wood* and *Hillyer* for Respondents.

Any error this Court may have committed in regard to the proof of damages is immaterial if there was no proof of conversion. There was no conversion proved, because defendants are not shown ever to have been in the possession of the plaintiff's property, or to have exercised any control over the same, or to have excluded plaintiffs therefrom. If there is no conversion, everything else in an action of trover is immaterial. The sale by the Sheriff of the

property mortgaged did not sell the pans, etc., which were leased. They were personal property, and did not pass by a sale of the realty. Plaintiffs might have brought replevin for the property. Nor did McLane sell the pans by his sale of the realty. He never took possession of the pans or pretended to sell them. He only sold what he bought: the real estate included in the mortgage. Neither did he receive from Uznay & Co. rent for the pans, but only rent for the real estate. The rent for the pans was due from Uznay & Co. to Booth & Co.; whether it was paid or not to plaintiff, does not appear, nor was it the business of McLane to know. The refusal of Wells, Fargo & Co. to deliver up the pans, etc., amounted to nothing unless it was in their power to comply with the demand. (3 Phillips on Evidence, 541; 2 Greenleaf on Evidence, Sec. 644, p. 602, *Kelsy* v. *Griswold*, 6 Barb. 436.) This machinery at the time of demand was in the possession of Uznay, and was not, and never had been in possession of Wells, Fargo & Co.: consequently they could not deliver it.

*DeLong* in reply.

The evidence shows the property in dispute was affixed to the freehold, and therefore passed by the Sheriff's deed.

Possibly replevin might have been sustained for this property as against the original parties to the lease, but certainly not against a stranger, into whose hands the property came with these things attached to the freehold. (*Merritt et al.* v. *Judd et al.*, 14 Cal. 59; *Sands* v. *Pfeiffer*, 10 Cal. 264; *McGreary* v. *Osborne*, 9 Cal. 121.) The rule as to what is a fixture, is very different in a controversy between vendor and vendee from what it is in a case between landlord and tenant. (See 2 Bouvier's Institutes, pp. 161 to 165.) McLane admits Uznay was his tenant, attorned to him and paid him rent. The possession of the tenant is the possession of the landlord.

The failure of Latham (Wells, Fargo & Co.'s agent) to comply with a request for delivery, is tantamount to an absolute refusal. (*Ferris* v. *Straus*, 5 N. Y. 19; 2 Abbott's Digest, 430, Sec. 5.) If Wells, Fargo & Co. had placed it out of their power to comply, no demand was necessary. (*Delamater* v. *Miller*, 1 Conn. 75; *Everet* v. *Coffin*, 6 Wend. 603; 1 Johns. Cases, 406.)

Opinion by BEATTY, C. J., LEWIS, J., concurring.

This case presents the following material facts : In the month of August, 1862, Burton, Kellogg and Uznay owned a quartz mill called the Phœnix Mill, and were conducting the business of crushing quartz, under the firm name of " Phœnix Mill Co." At this time their mill property was mortgaged for some $20,000, and the defendants, Wells, Fargo and Co., held the mortgage as assignees of the original mortgagees. The Phœnix Mill Company being anxious to add some pans and other machinery to their mill, applied to the plaintiffs to rent them the necessary machinery. The plaintiffs consented to enter into the arrangement, provided Wells, Fargo & Co. would become parties thereto so far as to protect them against any loss or danger arising from their claim by way of mortgage.

The result of the negotiation was, that two articles of agreement were drawn up and signed. The first is dated August 14th, 1862, and purports to be between H. J. Booth & Co., of the first part, and the Phœnix Mill Company, of the second part. By this agreement the parties of the first part grant, demise and let to the parties of the second part various articles of machinery, to be delivered at the Phœnix Mill at various specified days between then and the first of October following : the said machinery to be leased to the mill company for the period of six months, from the first of October ensuing, at a monthly rent. At the end of six months the parties of the second part agree to surrender the machinery. There is a further promise that the parties of the second part may, at their option, purchase the machinery after the expiration of six months, at a specified price. This instrument concludes with the usual form of sealed instruments, and is signed thus :

H. J. BOOTH & Co.   [L. S.]
PHŒNIX MILL Co.    [L. S.]
By CHAS. UZNAY.

The second is dated August 15th, 1862. It recites the facts in relation to the mortgage executed by the members of the Phœnix Mill Company, their agreement with Booth & Co. for the machinery,

and the fact that Booth & Co. might, under that agreement, require the privilege of removing the machinery, and winds up as follows :

" Now, therefore, for the purpose of assuring to said Booth & Co., without objection or hindrance on the part of Wells, Fargo & Co., the right to make such removal if they shall require it, as well in consideration of the sum of one dollar, cash in hand, paid by said Booth & Co. to Wells, Fargo & Co., they the said Wells, Fargo & Co. hereby agree and consent that the said Booth & Co. may have the right and privilege of removing said amalgamating machinery from said mills on the expiration of said six months' lease ; provided, that the same shall be done without detriment or injury to the said mills or machinery as it now stands.

" Dated at Virginia City, Nevada Territory, August 15th, 1862.

"  H. J. BOOTH & Co.    [SEAL.]
"  WELLS, FARGO & Co.   [SEAL.]
          By W. H. SIMMONS, Ag't."

Several months before the expiration of the lease, Wells, Fargo & Co. took steps to foreclose their mortgage. About two weeks after the expiration of the lease the decree of foreclosure was rendered, and in a little less than a month after the decree the sale took place, and Louis McLane—one of the firm of Wells, Fargo & Co.—became the purchaser. In this purchase, it is admitted he was acting for the company. At the end of six months, the Sheriff's deed was executed to McLane.

In the meantime the original owners of the mill remained in possession. After McLane got the deed the mill company attorned to him and they paid rent, but never delivered the actual possession. McLane entered into a contract to resell to the mill company ; but they being unable to pay, this contract was not carried out, and at their request he sold the mill to a third party.

Before this sale was made, Booth & Co. had made a written request of James H. Latham—the agent of Wells, Fargo & Co. at Virginia City, where the property is situated—to be allowed to enter on the premises and remove the leased machinery. To this request the agent made an evasive reply, neither authorizing nor refusing permission to enter on the premises and remove the

rented machinery.   Such appear to have been the facts proved on the trial.

It is necessary now to revert to the pleadings.   The complaint is against a number of parties who are alleged to be partners, composing the firm of Wells, Fargo & Co.   The complaint first recites the fact of the execution and transfer of the mortgage by the mill company.   That they (plaintiffs) were at a certain time the owners of certain machinery.   That they refused to rent it until Wells, Fargo & Co., "for a valuable consideration undertook and faithfully promised and agreed to and with said plaintiffs that they, said plaintiffs, should have the right and privilege of removing said amalgamating machinery above described from the said mill at the expiration of the said proposed lease."   That upon this agreement being entered into by Wells, Fargo & Co., they leased the machinery to the mill company, setting out the terms of that lease and making it a part of their complaint.   That before any part of the machinery was delivered they had entered into the contract with Wells, Fargo & Co. for its removal, etc., stating the substance, effect and legal operation, as the pleader seems to have understood it, of that instrument and setting out the instrument itself, and averring that Wells, Fargo & Co. received a valuable consideration for entering into it.   That the machinery was delivered in accordance with the terms of the lease.   That the mortgage was foreclosed, and defendants obtained possession of the property mortgaged, including the machinery.   The concluding part of the complaint is as follows :

"The plaintiffs further allege upon information and belief, that all of said bottoms, pans, shafting, gearing, etc., are still in said mill, that the said lease has expired, and aver that they, the said plaintiffs, are still the owners of and lawfully entitled to the possession of the said property, and that the same has never been paid for by the said Phœnix Mill Company, or by the said defendants. The plaintiffs further allege that being so the owners, and entitled to the possession of the said property, they did, on or about the 14th day of February, 1865, at Virginia, County of Storey, make demands upon the said Wells, Fargo & Co. to surrender to them all of the said property, or to permit the said plaintiffs to enter

upon the said premises, and permit them to remove the said property, the said plaintiffs offering to effect said removal without detriment or injury to the said mills or other machinery not belonging to them. The plaintiffs finally allege that the said defendants wholly failed, neglected and refused, and still do fail, neglect and refuse, either to deliver the said property, or any part thereof, to the said plaintiffs, or to permit them to enter upon the said premises and effect said removal themselves. But the said defendants have kept, retained, and converted the said property to their own use and benefit, whereby the plaintiffs have sustained damages in the sum of $10,000. Wherefore the plaintiffs bring suit and demand judgment against the said defendants for the said sum of $10,000 and costs of suit."

The answer denies that there was any consideration for the contract entered into by Wells, Fargo & Co. ; denies some of the legal effects alleged by the plaintiffs to arise upon the execution of the contract ; denies that Wells, Fargo & Co. ever got possession of the mortgaged property or had control of the machinery, and closes with the following denial :

" And defendants further deny that they have kept, retained, or converted the said property, or any part thereof, to their own use or benefit, or that by any act of defendants, plaintiffs have sustained damages in the sum of $10,000, or any other sum whatever."

Upon these pleadings the parties went to trial, and plaintiffs offered to prove, by one Tyrel, the value of the machinery in the month of February, 1865, the time that the plaintiffs demanded permission to remove it. This the Court refused, on the ground that there was no allegation in the complaint of its value at that time. The plaintiffs then offered to prove by the same witness the amount of damages they had sustained by failure and neglect of defendants to surrender the property. The Court refused also to admit this evidence, and then granted a nonsuit on the ground that plaintiffs had failed to prove a conversion by defendants.

To each of these rulings plaintiffs excepted, and now allege that they were erroneous, and the judgment should be reversed.

The first question to be determined is : What is the nature of this action ? The respondents contend that it is trover, and that

there was no proof of conversion, and therefore the action cannot
be maintained, and the nonsuit was right.    The complaint seems
to have been framed as an action on contract.   Whether in assump-
sit or covenant it would be hard to say.   And from the peculiarities
of the instrument, (signed with the firm or partnership name of the
contracting parties, and having a seal annexed to and following
their signatures) it is perhaps equally hard to say whether the
contract should be treated as a covenant or a mere written agree-
ment not under seal.   But treating it as one or the other, the facts
are all set up in the complaint which it would be necessary to set
up either in an action of covenant or assumpsit.   As our statute does
away with all mere form, it is allowable to treat it as one or the
other.   In addition to all the allegations necessary to sustain the
complaint as one on contract, there are also other allegations suffi-
cient to make it a good complaint in trover.   If we treat this as
an action of trover, at least nine-tenths of the complaint are sur-
plusage.    The allegations necessary to maintain that action are
simple and few.    All the allegations about the contracts, etc.,
would in such case be surplusage.    It is true that the facts stated
in the complaint would have to be proved; but if the action is to
be treated as one in tort, they ought not to be stated in the plead-
ings.

On the other hand, if we treat this as an action on contract, then
all that part about conversion, etc., which pertains particularly to
the action of trover, is to be treated as surplusage.    But whatever
the action may be, it is for a single object: to obtain damages done
to plaintiffs by depriving them of their machinery.   Under our very
liberal system, the pleading must be sustained, and the plaintiffs
will be entitled to recover, if all the facts stated in the complaint,
and which are sustained on the trial, either by proof, the admissions
of defendant in open Court, or the want of denial in the answer,
show that plaintiff has a good cause of action to recover in dam-
ages.    Let us see first whether the plaintiff is entitled to recover in
trover.    To determine this, it is necessary to make some investiga-
tion as to the nature of what I shall, in this opinion, call *fixtures.*
This word " fixture " is used in a variety of senses.   In its broadest
signification it is sometimes used to designate anything which is by

7

artificial means attached permanently or substantially to the soil or freehold. But there is another and more technical meaning sometimes given to the word. That is, something substantially affixed to the land, but which may afterwards be lawfully removed therefrom by the party affixing it, or his representative, without the consent of the owner of the freehold. It is in this latter sense that the word is used in this opinion. Fixtures of this kind have been held by many Courts in the United States as personal property, even whilst attached to the soil. As they are the personal property of the party attaching them to the soil before they become fixtures, and as he has the right to remove them at any time, and again convert them into personal property, some Courts have seen proper to hold them all the time as such. Under this view of the case, Courts in Maine, Massachusetts and New York have sustained actions of trover for fixtures that were never removed or detached from the freehold. (See *Russell* v. *Richards*, 1 Fairchild, 429; *Ford* v. *Cobb and others*, 20 N. Y. (6 Smith) 344; *Smith et al.* v. *Benson et al.*, 1 Hill, 176; *Wells* v. *Bannister*, 4 Mass. 514; *Ashmun* v. *Williams*, 8 Pick. 402.)

In all these cases the Courts call the things which are the subject of litigation personal property, although they are, technically, fixtures; that is, things attached to the land, but with a privilege on the part of some one other than the owner of the land to remove them. If these cases be law, then we have no doubt of plaintiffs' right to recover in this action, for these pans, etc., clearly became fixtures under the contracts with the Phœnix Mill Company and Wells, Fargo & Co. The sale of the property and purchase thereof by McLane for Wells, Fargo & Co., did not change their status. There can be no doubt but that as long as either the one or the other of these parties held the mill, the plaintiffs had a right to take off the pans. McLane, acting for Wells, Fargo & Co., converted the pans by selling them with the mill. No other proof of conversion but the sale of the mill with its fixtures, was necessary. Under these authorities, Booth & Co. could either treat the sale by McLane as a conversion and sue Wells, Fargo & Co., or might demand the pans, etc., from the present owners of the mill, and on their refusal to surrender, sue them.

But whilst these authorities, highly respectable in character, support this view of the case, the writer of this opinion cannot but dissent from the views expressed in all these cases. In my opinion, property is either real or personal, according to its nature. Contract cannot make a chattel realty, nor realty a chattel. The case cited from 1 Fairfield shows the danger of such departures from common law principles. In that case, a man buys a piece of land with a saw-mill on it. He knows nothing about anybody but the owner of the freehold having any claim to the mill. But after the purchase, he is sued for the mill, and its value recovered from him. If such a doctrine is tenable, then the man who buys a lot covered by a brick house may, without any negligence on his part, be compelled, after having paid the owner of the soil for lot and house, to pay somebody else for the house. Such a doctrine appears to me extremely dangerous. The New York Courts seem to hesitate in following the Maine case to its legitimate result. They seem only willing to apply the principles of this case when the property in controversy approaches the character of personalty in its-nature. But if mere contract can convert potash kettles built into a wall in such a manner as to be firmly attached to the freehold, then it can also convert saw-mills and granite walls into personalty. In my opinion all fixtures whilst attached to the freehold are, for the time being, a part of the realty. No contract can change their nature. It is true there may be a contract allowing some one to take them off. Indeed, unless there be some contract, law or custom allowing such removal, they are not technically fixtures. But a contract that something may be converted into personalty at a future day, does not make it so from the time of the contract. The owner of the land might make a contract allowing another to take off all the soil to the depth of ten feet for making brick; but the contract alone would not convert the surface of the soil into bricks or other personal property. It would still be a part of the freehold. In my opinion this complaint should be treated not as a declaration in tort, but as one on contract. As such I believe it to be sufficient.

The necessary preliminary facts appear by the pleadings; the instrument which is the foundation of the action is set out, and we

think a breach is well assigned. Among other things, defendants agreed that plaintiff might " have the right and privilege of removing said amalgamating machinery from said mills," etc., etc.

The breach assigned is, that defendants wholly failed, neglected and refused, and still do neglect and refuse to deliver said property (amalgamating machinery) * * * * *or to permit them* (plaintiffs) *to enter upon the said premises* (the premises where the machinery is fixed) *and effect said removal themselves.* The breach is not in the same language of the contract, yet it seems to be sufficiently stated. The answer does not negative this breach. There are indeed but few material allegations or denials in the answer. It denies any consideration for the agreement, but ample consideration is proved. It denies any damage, and denies that defendants were ever in actual possession of the mill and machinery. These are all the material denials therein contained. The denials of any damages arising from the action of defendants, put the plaintiffs on the proof of these damages, and we think one of the best methods of proving these damages was to prove what the machinery was worth when plaintiff asked permission to remove it. Of course the value would have been diminished by the cost of removal, but that cost would have been a proper subject of cross-examination. There is nothing in the point that plaintiff did not aver the value of the machinery at the time he offered to remove it. Such an averment would have been unnecessary, treating this action as in tort, or on contract. The proper averment was the amount of damage sustained by the tort or breach of contract; proving the value of the property was only one of the many methods of proving the damage. We are not by any means satisfied that the fact that defendants never were in the actual possession of the mill is a sufficient excuse for refusing to permit plaintiffs to enter and remove the machinery. *Non constat,* but that if defendants had consented, their tenants who were the original lessors of plaintiffs, would also have consented to the removal of the machinery. As the pleadings stand, it appears to us the plaintiffs should have been allowed to prove their damages.

The cause is reversed, and remanded for a new trial.