The State of Nevada *v.* The Manhattan Silver Mining Company.

# THE STATE OF NEVADA, Respondent, *v.* THE MANHATTAN SILVER MINING COMPANY, Appellant.

Unauthorized Alterations in Assessment Roll.  Where an Assessor, in making up his quarterly assessments on the proceeds of mines, erroneously deducted $40 per ton from the amount of proceeds as returned in the sworn statements of a mining superintendent; and the assessment roll in that condition was sworn to and turned over to the Auditor, and by the Auditor, after his duties in regard to it were performed, returned to the Assessor for collection; and the Assessor then, upon discovery of the error, crossed off the assessment as made, and inserted a larger amount, so as to include the $40 per ton previously deducted; and the original assessment remained entirely legible, notwithstanding the erasure: *Held*, that the Assessor had *no authority to make the alteration after the roll had passed out of his hands as such Assessor*; that the roll in its original state was the proper assessment roll; that as it remained legible, as originally made, the unauthorized alteration did not avoid it; and that it was competent evidence on the alteration being accounted for.

Alterations and Erasures.  No one can be deprived of the benefit of a deed, instrument, contract, or written evidence, on account of an alteration or erasure, provided it appear that such erasure or alteration was made without the knowledge or consent of the party wishing to use the same, and it can be ascertained by any legal method of arriving at the knowledge of that fact how the instrument originally read.

Assessment Roll in Hands of Collector cannot be Altered.  Neither an Assessor nor a district attorney can alter an assessment roll after the same has been turned over to the collector of taxes; and if they do so they act not as agents of the State, but as mere strangers.

Mere Objections of Counsel in Transcript not Proof of Facts.  On appeal from a judgment for delinquent taxes, it was objected that the delinquent list was not properly certified by the Auditor; but the list itself was not made a part of the record, and all that the transcript showed in relation to it was, that in the court below counsel "objected to the list, because of its not being properly authenticated, in that no certificate is contained therein or attached thereto:" *Held*, that there was nothing to show a want or defect of certificate, and that the objection was of no avail in the appellate court.

Transcript must show Facts Directly.  To establish a fact so that the Supreme Court can act upon it, a transcript must show evidence introduced in relation to it, or an admission of it by opposite counsel, or a certificate of the Judge who tried the case, to that effect, or a positive statement of the circumstance as having in some way been shown on the trial.

State Taxes need not be Levied by County Commissioners.  The levy of State taxes by the Board of County Commissioners, though provided for in the revenue laws, is an idle ceremony, for the reason that the levy is made by the Legislature.

County Taxes must be Levied by County Commissioners.  The amount of taxes

for county purposes must be fixed and levied by the Board of County Commissioners; and without their proper action no county tax can be collected.

No EQUALIZATION OF TAXES NECESSARY WHERE NO INJUSTICE COMPLAINED OF. There is no necessity of, and the law does not require, an equalization of any assessment roll, unless some one complains of injustice in the assessment; so that a party assessed, who has not complained of injustice, cannot object that the assessment was never equalized by the Board of Equalization.

COMPLAINTS AS TO ASSESSMENTS ON PROCEEDS OF MINES. A tax-payer on the proceeds of mines may complain of inequality of assessment upon him at any time before the taxes are collected or sued for.

THE STATE *v.* ESTABROOK, 3 NEV. 173, as to constitutionality of revenue law imposing quarterly taxes upon proceeds of mines, approved.

CONSTRUCTION OF REVENUE ACT OF APRIL 2D, 1867. The Revenue Act of April 2d, 1867, (Statutes of 1867, 163) provided for the levy of a quarterly tax on the proceeds of mines, amounting in the aggregate to the same amount of taxation as previous laws required to be levied annually: *Held*, that under it a quarterly tax for the first quarter of the year 1867 was properly levied, and that its operation in respect to such tax could not properly be called retroactive.

CONSTRUCTION OF REVENUE LAWS—MEETINGS OF COUNTY COMMISSIONERS. The Act of March 8th, 1865, (Statutes of 1864–5, 257) provided that the Board of County Commissioners, whose duty it was to levy county taxes, should meet on the first Mondays in January, April, July, and October, and adjourn from time to time until the business before them was disposed of; and also provided for calling a special meeting at any time after a final adjournment, but required, in case of such special meeting, a previous advertisement thereof for one week. On April 2d, 1867, an Act was passed, providing that the County Commissioners should, in that year, levy the taxes before the third Monday in April. In Lander County, the Board of Commissioners had met on April 1st, and adjourned to April 6th, and then to May 6th. On April 8th, having just received the new Act, the Board met and directed a special meeting for Saturday, April 13th, on which day the taxes were levied: *Held*, that the meeting was properly held without an advertisement for one week, for the reason that the Act of April 2d, 1867, itself authorized the meeting, to the end' that the duty required by it might be performed, irrespective of former provisions of laws regulating special meetings.

ADJOURNMENTS OF MEETINGS OF COUNTY COMMISSIONERS. Under the law creating Boards of County Commissioners, (Statutes of 1864–5, 257) which provided that they should hold their meetings on the first Mondays of January, April, July, and October, and adjourn from time to time until the business before them should be disposed of: *Held*, that after a Board had adjourned to a day certain, it had no power to revoke such order and meet at an earlier day.

OBJECTIONS TO FINDINGS. Objections that findings are not sufficiently specific, and that some of them are conclusions of law instead of findings of fact, cannot be made available on appeal, unless application' to correct or amend them is shown to have been made in the Court below.

MAYOR, ETC., OF CITY OF VIRGINIA *v.* CHOLLAR-POTOSI COMPANY, 3 NEV. 86, and STATE *v.* KRUTTSCHNITT, 4 NEV., as to constitutionality of Act of April 2d, 1867, imposing quarterly tax upon proceeds of mines, approved.

APPEAL from the District Court of the Sixth Judicial District, Lander County.

This was an action by the State of Nevada against the Manhattan Silver Mining Company, the possessory claim to the mine or mining claim or ledge known as the North Star Ledge, in the Reese River Mining District, in Lander County, and unknown owners thereof, to recover the sum of one thousand four hundred and eighty-one dollars and five cents, as taxes upon the proceeds of the mine for the first quarter of the year 1867. The amount sued for was the total of the tax as shown by the alterations in the assessment roll referred to in the opinion. The judgment was in favor of the plaintiff for the sum of one thousand one hundred and twenty-five dollars and twenty-eight cents, the total of the tax as shown by the original assessment roll, and costs.

*D. Cooper* and *Wren and Croyland*, for Appellant.

## I.

The Court below erred in admitting in evidence the assessment roll and delinquent list, because the same had been altered, changed and erased in material points, and the alterations were unaccounted for. These instruments may be properly said to belong to the class named by Greenleaf in his work on Evidence (1 Green. Ev. § 483) as " official registers," and owe their validity and weight as proof and admissibility as evidence to their official character, which again depends upon the entries in them being made promptly and by the proper officers, and in the mode prescribed by law. In the case in hand, the law requires that an assessment roll and delinquent list shall be made by certain officers, delivered at certain times to other officers authorized to receive them, and authenticated by certain certificates attested by affidavits attached thereto. The assessment roll here was completed and delivered to the Auditor on May 11th, 1867; the Auditor extended the taxes and ascertained the total amount thereof, and on May 27th, 1867, delivered the roll to the Assessor, as *ex officio* collector of taxes on proceeds of mines, for collection. After the roll was so delivered, the Assessor, on his own motion partly and partly under the direc-

The State of Nevada *v.* The Manhattan Silver Mining Company.

tion of the District Attorney, made many changes, alterations and erasures in the roll so delivered to him, especially in the entries of the assessment of the appellant. We claim that the assessment roll being in the custody of the authorized agent of the State, and for the purpose of collecting taxes for the State benefit, was in the State custody, and while in its custody these alterations were made by it, for its own benefit, in its own favor, (for the Assessor is the agent of the State and for his acts the State is responsible, so far at any rate as the establishment or destruction of any of its own rights may be effected—and if loss ensues, it should look to its agent for reimbursement) and has thus by its own act altered in the legal sense of the term, the instrument offered in proof, and rendered it inadmissible in evidence. (Green. Ev. §§ 564, 565, 566.)

Were the alterations accounted for satisfactorily? They were accounted for by the confession of the State agents, which showed that it was the State act and for its own aggrandizement, therefore fraudulent, and with the improper design to change its effect.

Again: the instruments offered in evidence were not those sworn to by the Assessor, as Assessor in one case and *ex officio* collector in the other. An assessment roll and delinquent list had been sworn to, certified and attested, and a totally different one was produced at the trial to support the complaint. The Assessor never swore to the roll in the condition it was, or importing the facts that it did when produced in Court. The Auditor had not certified to that roll, or extended that assessment sought to be recovered on. The books produced at the trial had none of the necessary official authentication that such instrument required, and without which they are mere waste paper.

The delinquent list had no certificate from the Auditor to the effect that he had examined the same and that it was correct, after comparing the same with the assessment roll.

## II.

It is conceded that the Commissioners of Lander County met at a regularly adjourned meeting on March 30th, 1867, and levied State and County taxes under the then existing law; but three

days afterwards, on April 2d, 1867, the section of the statute giving that body authority and power to make such levy was repealed, without any saving clause preserving any rights arising under the old law. This old law being repealed became as if it had never existed, and all rights not matured and reduced to actual possession that said section had given birth to, fell with it. (*Butler* v. *Palmer*, 1 Hill, 324 *et seq.*, and cases therein cited; *Billing* v. *Harvey*, 6 Cal. 383 ; *Bowers* v. *Beck*, 2 Nev. 158.)

The levy made by the Commissioners on April 13th was invalid for the reason that their meeting was unauthorized, the notice of one week required by law not having been given. The order for the meeting was made April 8th, and the meeting held on April 13th, leaving only five days for the notice to run instead of seven. This defect was fatal, for a board of County Commissioners being a body of limited and inferior jurisdiction, can give their acts and proceedings validity solely by following strictly the course prescribed in the statute creating them, and directing how their proceedings shall be conducted. Therefore the meeting of April 13th not being properly called, was illegal, and all proceedings had thereat were void. (See also *El Dorado County* v. *Reed*, 11 Cal. 130.)

### III.

The assessment roll of the proceeds of the mines of Lander County for the quarter ending March 31st, 1867, should not have been admitted in evidence, because no opportunity had been offered or afforded to equalize it, and it had never been equalized. We claim that it is essentially necessary for the validity of an assessment roll, and to secure fairness and impartiality in the distribution of fiscal burdens, that the same should be equalized, and an opportunity afforded, when desired, for the readjustment of the taxes upon the several tax-payers therein contained. In this case no attempt was made or opportunity offered to secure this desirable end, therefore the reception of the assessment roll in evidence was a fatal error.

### IV.

That portion of the revenue law which provides for quarterly assessments and payments of taxes on the proceeds of mines, is un-

The State of Nevada *v.* The Manhattan Silver Mining Company.

constitutional, for the reason that the Constitution (Schedule, Sec. 24) forbids, in express terms, for the first three years after its adoption the imposition of taxes for State purposes exceeding one per cent. per annum on the taxable property in the State, with the exception of the special tax of one-quarter of one per cent. for the payment of the indebtedness of the late Territory assumed by the State.    The Constitution was adopted on the first Wednesday in September, 1864, and the amended Act requiring quarterly assessments and payments of the taxes on the proceeds of mines was approved April 2d, 1867.    If now a quarterly tax of one and one-quarter per cent. is more than one per cent. per annum, the statute must fall as being within the constitutional provision.    One and one-quarter per cent. per quarter amounts to six per cent. per annum ; but from this there must be deducted the sum of one-quarter per cent. per annum for the payment of the Territorial debt, leaving a tax of five and three-quarters per cent. per annum imposed on the proceeds of the mines for State purposes.    It may be urged that in reality this is only a tax of one and one-quarter per cent. per annum on the annual amount of the proceeds of the mines.    We reply, then make it an annual tax and not a quarterly one.    The Constitution (Art. IX, Sec. 2) says: " The Legislature shall provide by law for an annual tax."    And again (Art. X) says, " shall provide by law for a uniform and equal rate of assessment and valuation."    If the rule is held to apply that the mentioning of one thing is the exclusion of all others, then the Constitution must be so construed to mean that the Legislature shall provide for an annual tax, but not a quarterly or any other, and cannot compel one class of tax-payers to be assessed and pay the taxes thereon four times a year instead of once.

## V.

The Act of April 2d, 1867, is not and was not intended to be retrospective and retroactive in its operation.    No Act of the Legislature should be construed to be retrospective, unless made so by express provision, declaring in unequivocal terms that to be the intention of its framers.    There is no such provision in this Act, and no such provision can be interpolated into it by implication.    (*Dash*

v. *Van Vleck,* 7 John. 499 ; *Smith's Commentaries,* §§ 149, 759 ; *Jackson* v. *Van Zandt,* 12 Johns. 174 ; *Hackley* v. *Sprague,* 10 Wend. 117 ; *People* v. *Columbia Co.,* 10 Wend. 365 ; *Ferris* v. *Public Auditor,* 3 Bradford, 263 ; *Palmer* v. *Cowly,* 4 Denio, 376 ; *Sayre* v. *Wesner,* 8 Wend. 663.)

The testimony shows that all the bullion, the subject of the assessment and tax in dispute, was out of the State before April 1st, 1867, excepting $56,000, sent on April 9th, 1867. The Act under which the assessment was made was passed April 2d, 1867, and the levy made on April 13th, 1867. We contend, therefore, that the Act only imposed a tax on the $56,000 in the State on the day of its approval for State purposes, and that as the levy for county purposes was not made until April 13th, and the bullion was then gone and out of the county, the levy did not attach to it. The Act only imposes a tax for State purposes upon taxable property " *in this State,*" and for county purposes upon taxable property " *in the county,*" consequently, as none of the property was in the county, and only $56,000 in the State, the only tax that could be levied was on the $56,000, and that only for State purposes.

*Robert M. Clarke,* Attorney General, for Respondent, called attention to the fact that there had been no application for a new trial in the Court below, and that therefore the findings were conclusive and could not be reviewed, and also that the objections taken to the introduction of evidence could not be considered, because it nowhere appeared in the record that the Court below ruled upon the objections, or that the rulings, if made, were against defendant, or if made and against defendant, that any exception was taken. He contended that the legislative power of taxation was unrestricted except as to " uniformity and equality," and that this limitation had no reference to the time or manner of taxation, but simply required that all property should be taxed (except as reserved in the Constitution) at a uniform rate. (*People* v. *Burr,* 13 Cal. 350 ; *People* v. *Seymour,* 16 Cal. 341 ; *Mayor, etc., of Virginia City* v. *The Chollar-Potosi S. M. Co.,* 3 Nev. 86.) He further contended that the Act of April 2d, 1867, was retrospective, or more properly that it was intended to impose, and did

legally impose a tax on the proceeds of mines or ores extracted prior to its passage, and subsequent to December 31st, 1866. He claimed the question as to whether the property was taxable in this State, though it had been sent and was out of the same when the levy was made, could be considered, because it involved a question of fact not found by the Court below, and that no motion had been made to correct the findings, and no exception taken to them. (*James* v. *Williams*, 31 Cal. 211; *Green* v. *Clark*, 31 Cal. 591.)

*H. Mayenbaum*, District Attorney of Lander County, also for Respondent.

I.

The delinquent list and assessment roll were properly certified and authenticated, but even if they were not, the objection could not be raised because the statement did not show that they were not properly certified and authenticated.

II.

There could be no fraud in the assessment, because it appeared in evidence that the defendant gave in to the Assessor a sworn statement of the proceeds of their mine, which only were taxed, and they were estopped from denying or questioning the assessment or tax.

III.

The alteration in the assessment roll, being made by one without authority, did not affect the roll as it originally stood, and as it could easily be ascertained. The alteration or destruction of an instrument by a stranger without the privity or consent of the party interested does not affect the original if the terms of the original can be ascertained. (Piggot's case, 11 Coke, 27; *Henfree* v. *Bromley*, 6 East. 309; *Master* v. *Miller*, 4 T. R. 339; 3 T. R. 151; *Ruse* v. *Ovenbaugh*, 6 Cow. 746; 2 Parsons on Contracts, 223; 8 Cow. 71; 11 Mass., 413, 477; Practice Act, Sec. 395.)

The Assessor was the agent of the State only to perform certain duties prescribed by law. Having made the assessment roll and delivered it to the Auditor, he had no more right to alter it than a stranger. His functions had ceased and no act of his could deprive the State of its vested rights.

## IV.

The levy was properly made. A levy under the old law of an annual tax had been made in March, 1867, and afterwards, on the passage of the Act of April 2d, 1867, a quarterly levy was made, taking the place *pro tanto* of the former levy. This was not·improper. (*State* v. *Estabrook*, 3 Nev. 173; *Warren* v. *Charleston*, 2 Gray, 85; *State* v. *Kimball*, ·24 Pick. 359; *Fischer* v. *McGier*, 1 Gray, 21; *Bank of Hamilton* v. *Dudley's Lessees*, 2 Peters, 526; Sedgwick's Stat. and Con. Law, 595; *People* v. *McCreery*, —— Cal. ——.)

## V.

Vested rights are not taken away by the repeal of a statute, provided there is a remedy for the enforcement of such rights, and a Court having jurisdiction to enforce them. When the assessment is made, the tax becomes a debt or obligation owing from the tax-payer to the State. This obligation is fixed, and the tax-payer remains personally liable for the taxes. Consequently, the repeal of the previous law by the operation of the Act of April 2d, 1867, could not interfere with the right, though it might be that the Legislature in express terms could relinquish its right to delinquent taxes, if it were not for our Constitution, which requires uniformity of taxation.

Admitting, for the sake of the argument, that, so far as the first quarter of 1867 is concerned, the Act of April 2d, 1867, must be construed to have a retrospective effect, still such a law is constitutional. All retroactive statutes are constitutional except where they infringe on vested rights. All remedial laws are retroactive unless the statute is expressly limited to future operation. (*Virginia* v. *Chollar-Potosi*, 2 Nev. 92; 1 Hill, 327; *Morse* v. *Gould*, 11 N. Y. 281; *Bartlett* v. *Lang, Administratrix*, 2 Al. 401; *Gordon* v. *S. F. Canal Co.*, 1st McAllister, 513.)

By BEATTY, C. J.

This was an action brought to recover certain taxes alleged to be due the State and the County of Lander, from the defendant, on the ·product of mines for the first quarter of the year 1867.

On the trial of the cause, plaintiff offered to introduce in evidence the delinquent list of the taxes on proceeds of mines of Lander County for the first quarter of 1867.   Defendant objected to the introduction of this list on various grounds ; among others, that it showed on its face that it had been altered, erased, etc., in many respects, and was not, therefore, admissible in evidence.   This objection was reserved for argument.   The assessment roll of the taxes on the proceeds of the mines for the same period was also offered, and the same objections urged to its admission.

It appeared in evidence that one Allen A. Curtis, agent of defendant, had made to the Assessor the following report :   " Statement of the amount of ores obtained from the mines of the Manhattan S. M. Co., of Nevada, and the net product of the same for the quarter ending March 31st, 1867.

" North Star Mine, 374½ tons, average net product per ton ($136.37) one hundred thirty-six thirty-seven one hundredth dollars."

This report is accompanied with an affidavit in the necessary and prescribed form.   The Assessor in making his assessment or entry on the assessment roll from this report, made several mistakes or blunders.   The most material one was, that he made the entries so as to deduct forty dollars per ton from the reported yield of the ore, although that deduction had already been made by the agent of the mining company.   So that in reality, $80 per ton was deducted from the gross yield of each ton of ore, thus diminishing the apparent amount due the State to the extent of nearly $400.

After the assessment roll had been sworn to as the law requires, and turned over to the Auditor, and by the Auditor again returned to the County Assessor for collection, this error was discovered, and the Assessor, having first asked the advice of the District Attorney, drew his pen across the assessment he had made to the defendant, wrote the word " error" on the margin of the assessment roll, and on another line made a new assessment to the defendant, in which was attempted to make the assessment conform to the statement made by the agent of defendant.   The original assessment, however, remained entirely legible, notwithstanding the erasure marks drawn upon it.   It may be proper to remark here that

the District Attorney claims that when he advised the alteration, he was under the impression that the assessment roll was still in the hands of the Assessor as such, and had not passed over to the Auditor.

The Court finally, after argument, admitted the delinquent list and assessment roll in evidence, and gave judgment for the plaintiff for the amount of taxes due, as shown by the assessment roll when turned over to the Auditor, but not for the increased amount arising from the correction made therein by the Assessor and *ex officio* Collector after the roll was given to him for collection.

The appellant contends the delinquent list and assessment roll should have been rejected as evidence, because of material alterations made in them by the agent or agents of the State, and because the assessment roll offered in evidence was not the same assessment roll sworn to as correct, and turned over by the Assessor to the Auditor, and by him again to the Assessor and Collector. In other words, it was not the same roll because it had been altered, added to and erased after it came into the Auditor's hands.

Whatever the doctrine may once have been in regard to deeds, (and there was in this respect a wide difference between deeds and instruments not under seal) it is now well settled that no one can be deprived of the benefit of any deed, instrument, contract or written evidence, merely because the same has in any particular been erased or altered; provided, that erasure or alteration was made without the knowledge or consent of the party wishing to use the same, and it can be ascertained by any legal method of arriving at the knowledge of that fact, how the instrument read before the erasure or alteration.

Neither the District Attorney nor the Assessor was the agent of the State to alter an assessment roll in the hands of the *ex officio* Collector. Their acts were wholly unauthorized, and did not in any way affect the interest of the State or of Lander County; hence, the alteration is as if done by a mere stranger.

The papers were properly admitted in evidence. The objection that the delinquent list is not properly certified by the Auditor is not available in this Court, if, indeed, there is any such defect;

for the list itself is not contained in the record, nor any statement showing that there was a want of certificate, or that it was defective in any respect. The mere fact (and this is all the statement shows) that appellant objected to the list because of its not being " properly authenticated, in that no certificate is entered therein, or attached thereto," etc., etc., does not prove the want of certificate. Counsel frequently object to a paper because of some alleged defect which only exists in their imagination.

A lawyer may assign any reason he pleases for objecting to the introduction of a paper. The Court in settling a statement could not say such reason had not been assigned, although it might be convinced it was not founded on any existing facts. If counsel wish to establish a fact on which this Court can act, they must do it by the introduction of evidence, the admission of the opposite counsel, a certificate of the Judge who tried the case, or a positive statement of the circumstances as having in some way been shown on the trial. Had there been a direct allegation in the statement of facts in this case that when the delinquent list was offered, it had (as appeared by inspection) no certificate of the Auditor attached to it, this would have been a sufficient showing on this point, for if there had been such certificate the respondent could have amended the statement in this particular before the same was settled. But respondent cannot ask the Court below to alter the reasons assigned for a motion or objection by the appellant, although statements not founded in fact may be mixed up with these assignments of grounds for a motion.

As the facts on which this objection are based are not before us, we have not entered into any consideration of the question whether it would have been a valid objection if founded in fact.

The law of 1867 amending the revenue law requires the Board of County Commissioners to levy the annual taxes before the third Monday in April of each year. That Act was not passed until the 2d of April, 1867 ; the third Monday of April of that year came on the 15th of the month. So that the last secular day on which the levy could be made was on Saturday, the 13th. The Board of County Commissioners of Lander County had met for the transaction of business at a time prescribed by law, to wit:

22

Monday, the 1st day of April. That day they adjourned to Saturday, the 6th of April, and again on Saturday, the 6th of April, adjourned to May the 6th. On Monday, the 8th of April, the persons composing that Board met and entered an order directing a special meeting of the Board to be held on Saturday, the 13th of April, to levy the County and State taxes. This order was advertised from that day until the 13th in a newspaper, but of course this was less than one week. It is now claimed that the levy of taxes was illegal, for the reason that less than one week's notice was given of the time of this special meeting of the Commissioners.

In the first place as it regards State taxes, it appears to us the levy of them by the County Commissioners is a perfectly idle ceremony. It is true the Legislature requires it to be done, but affixes no penalty to a failure to perform the duty. The levy is made by the Legislature, and what good can it do for the County Commissioners to remake that levy, or what harm would it do to omit to make it, we are at a loss to understand. The Constitution has required the Legislature to provide for a uniform rate of taxation throughout the State. When the Legislature has done its duty we feel very certain that the tax could not be defeated, either in any particular county or throughout the State, by the delinquency of any Board of County Commissioners.

In regard to county taxes the case is somewhat different. The Legislature only fixes a maximum beyond which the County Commissioners shall not go. Within these bounds they are supreme and must fix the amount of taxes for county purposes. Probably without the proper action of the Commissioners no county tax could be collected. But have not the County Commissioners acted, and acted properly, in that respect? The law says they shall levy the tax prior to a certain date, and they did levy it prior to that date. But, says appellant, their action in this respect was a nullity, because the meeting of the Board at which the levy was made was a nullity. They had no authority under the law to meet at that time.

Section 3 of the Act of 1864–5, in relation to the County Commissioners, requires them to meet on the first Mondays of January,

April, July, and October of each year, and continue [adjourn] from time to time until all the business before them is disposed of.

Section 4 provides for calling a special meeting at any time after a *final adjournment* of a regular meeting. Among other things necessary to make such special meeting regular, the clerk must advertise or post notice of such meeting for at least one week previous to the time of meeting. This Section 4, it will be observed, refers to special meetings to be called after a *final adjournment* for the term. When this law was passed the Board of Commissioners of Lander County had not adjourned for the term, and therefore Section 4 does not have any application to the case. But it may be claimed that if the meeting could not be called under Section 4 of the Commissioner's Act, then there was no law at all under which the Board could meet. We think differently. This Act was passed on Tuesday, the 2d of April. This was the day after the regular quarterly meeting of the Board of Commissioners in the several counties of the State. These Boards are required to make their assessments before the 15th of April—practically on or before the 13th of the month. In the regular course of travel by stages and express the Act could not reach the more distant counties before, say, from the 7th to the 10th of the month. There was then no opportunity of advertising for one week before the meeting of the Boards in such counties. Yet they are positively required to meet and make these assessments. We think this is clearly a legislative dispensation with act of advertising. The Board needed no other authority for its meeting at the time it did meet than the Legislature requirement that it should perform this duty before a certain day. Again, whilst a Board of this kind after *final adjournment* is powerless to meet or transact any business until the next regular term, unless the meeting is called under some special grant of power, we are by no means satisfied that the same rule exists where there has only been an adjournment for a limited period within the term. We are not satisfied but that in such case the Board has it in its power to set aside or alter the day of adjournment so as to make the next meeting of the Board on a different day.

Another point made by appellant in this case is, that the Board of

County Commissioners, acting as a Board of Equalization, had never equalized the assessment of taxes on mines for the first quarter of 1867, and that those against whom such taxes had been levied had had no opportunity of having the same equalized, because the Board had never been in session from the time the assessment roll was delivered to the Auditor until it was returned to the Assessor or *ex officio* Collector.. The law does not require the assessment roll to be equalized unless some one complains of injustice to himself in the assessment made by the Assessor. We see no constitutional requirement that the Board of Equalization should act on such roll. There is no reason why an Assessor should not make the assessment for taxes as regular and equal as it can be made by the Board of County Commissioners. In regard to assessments for taxes on mines it is a mere privilege on the part of the tax-payer, of which he may avail himself at any time before the taxes are collected or sued for. The law does not fix or limit the time. It would doubtless be more convenient for all parties to have equalization made, if any is asked, whilst the list is in the hands of the Auditor. But a party is not by law limited to such time. (See laws of 1867, latter part of Section 4, page 161.) We presume the application might be made within reasonable time. If made before suit is brought it would not probably be held that the petitioner had lost his right to have the assessment equalized by undue laches. In this case there was no application for any equalization. There is, then, nothing in the point that the assessment roll was not equalized.

It is urged that this tax is unconstitutional because the Legislature is restricted for a period, not yet expired when this Act was passed, to an *ad valorem* tax of one and one-quarter per cent. per annum for State purposes, and this tax is for five per cent. per annum on the proceeds of the mines. We can hardly consider such a proposition as this seriously made. We held in the case of the *State of Nevada* v. *Eastabrook*, (3 Nev. 173,) first, that all *ad valorem* taxes must be of a uniform rate or percentage. Second, that the Constitution subjected the *proceeds* of mines, in lieu of the body of the mines, specially to an *ad valorem* taxation, and that it meant not a part, but the entire *proceeds* of such mines. Now if the *entire* proceeds of the mines for each fiscal year are to pay an

*ad valorem* tax of one and one-quarter per cent., we cannot see how it can possibly 'increase the percentage paid, to require this sum to be paid by the owner of the mine in four quarterly install-ments instead of being paid all at one time. The amount to be paid to the State would not vary by the fraction of a mill whether it were paid in one payment or in four installments. How, then, can it be said that paying it one way would be an annual burden of one and one-quarter per cent. on property, and the other way of five per cent. Let us illustrate. The State levies, we will say, an *ad valorem* tax of one per cent. on all real estate within its jurisdic-tion. The levy is made in August, and the law requires the tax-payer to pay what is assessed in four monthly installments, say in September, October, November, and December. A citizen has a house and lot which is worth $1,000. The one per cent. on this property amounts to $10, and this is all he has to pay. If he pays this at one time he only pays one per cent. annual tax. But if he pays it in four monthly installments, of $2.50 each, according to the argument in this case, he pays an annual *ad valorem* tax of four per cent. Stated in this way the proposition is simply ridiculous. Between this latter proposition and the one stated by counsel there may be a difference in form, but none in sub-stance.

The last proposition of appellant is, that the law is not retrospect-ive in its terms, and cannot have a retroactive operation. The pro-ceeds of the mines for the first quarter of the year 1867 having been already extracted, and a part of them realized and transported from the State before the law was passed, it cannot be held to operate on those proceeds. The Constitution, as we have hereto-fore interpreted it, requires the Legislature to have assessed and collected an annual *ad valorem* tax, (equal to the annual *ad valorem* tax on other property) on the entire proceeds of the mines. The law of 1864–5 imposed an *ad valorem* tax of one and one-quarter per cent. for State purposes on all taxable property in the State, and also allowed the County Commissioners to levy a tax not to ex-ceed one and one-half per cent. for county purposes. This section was amended in 1866, and again in 1867, but the amendments do not in any way alter the burden or amount of taxation. The old

law and the new law alike require and authorize the collection of the same amount of taxes. The amendments of 1867 only provided more specific directions for the mode of assessing and collecting these taxes. The Legislature could not, if it would, exempt any part of the proceeds of the mines for the fiscal year 1867 from taxation, without a palpable violation of the Constitution. In the amendments made to the revenue law in 1867 it directs certain things to be done for the purposes of ascertaining the value of the taxable property in the State during that fiscal year. The law, it is true, was passed, or amended, after the commencement of the year, but the whole object of the law was to fix the mode of assessment for that and future years. It could not assess part of the property liable to taxation in 1867 without assessing all. It was clearly and unmistakably the intention to assess all. That intention is sufficiently apparent from the language of the amendments, and must be carried out, even though the Act were to some extent retroactive. But according to our views, the Act does not come within the class of Acts properly called retroactive. It was an Act to affect the mode of collecting taxes for the year within which it was passed. It did not provide for the collection of any taxes which would have been payable before the passage of the amendments—it did not provide for the doing of any act which would otherwise have been done before the amendments were adopted, except the making of an assessment by the Board of County Commissioners, and that assessment it required to be made over under the amendment. It undid nothing; it annulled no former act except the county assessment; it only required that the assessments thereafter to be made should be made in a different manner from what they had heretofore been made. The taxes thereafter to fall due were to be collected in a somewhat different manner. The mere fact that some of the property on which these taxes were to be collected had been removed from the State before the passage of the amendments could not give a retroactive character to the Act. The property, whether removed or not removed before the change in the revenue law, was subject to its annual tax. This amended law neither takes away nor impairs any vested right; it creates no new liability or obligation on the tax-payer, and does not come

within the definition of a retroactive law. (See Sedgwick on Statutory and Constitutional Law, 188 *et seq.*) .

Judgment affirmed.

JOHNSON, J., with whom LEWIS, J., concurred.

I concur in both the reasoning and conclusions contained in the foregoing opinion, respecting the State tax, thus far—that the validity of such tax does not depend on the action of the Board of Commissioners in making a levy, as the law itself makes the levy. The Board may or may not do it without impairing in the slightest degree the right to enforce the tax. (*The People* v. *McCreery*, 33 Cal. —.) But the county tax stands on a different footing entirely. As to it, the action of the Board is indispensably necessary in fixing the rate and making the levy, and unless these steps are pursued, it is conclusive to my mind that the payment of the county tax cannot be compelled. As to the question whether the Board of County Commissioners of Lander County properly levied the county tax in the case at bar, I also agree with my associates in their conclusions, but upon grounds somewhat different from those stated in the opinion of the Chief Justice. "An adjournment," as he holds, "to a given day in the term, is not the *final* adjournment contemplated in the Act;" so that whereas in this case the Board stood adjourned to a future day within the April term, there was no authority to call a meeting at an earlier day within the adjourned period under the statutory provision requiring a published notice for one week. But I cannot permit to pass with approval the other proposition, that this Board, when adjourned to a given day, may revoke such order and convene at an earlier day. I consider that the members of such a Board have no such authority, and its acts, under these circumstances, can have no possible effect. Indeed, it is questionable whether our Courts can, after an adjournment to a given time, set aside the order of adjournment and meet at an earlier day, though we are aware that this Court has done so repeatedly—a practice inaugurated before I became a member of it, to which I have since tacitly assented, although entertaining grave doubts of its correctness. However, whether it be the proper practice, leaving the

question to be considered at the proper time, I am unwilling to extend the rule any farther, except where the law directly authorizes it.

Assuming therefore that this is the proper view to be taken of the matter, we must look to the supplemental Act of April 2d, 1867, solely, for the authority of the Board to make the levy on the thirteenth of the month, and as the law is general in its terms, it is not a question whether the county be near to or remote from the seat of government; so that it is perhaps not strictly correct to say there was a legislative dispensation with the necessity of advertising notice of the meeting in this case, but to place the proposition on the distinct ground that the supplemental Act of April 2d, 1867, in requiring the Board of Commissioners in the several counties of the State to do certain things, within a specified time, necessarily authorizes them to meet at any time within the limitation, to the end that the duty may be performed, irrespective of former provisions of the law regulating the meetings of such Board. Therefore I conclude that the levy made by such Board on the 13th of April was valid.

The alterations and changes made by the Assessor, in the assessment roll, after he had turned it over to the Auditor, were wholly unauthorized. Yet this did not vitiate the true assessment as it came to the hands of the Auditor. This could be readily ascertained by an inspection of the roll itself, coupled with the other proofs adduced at the trial. The erasures and changes having been fully explained, in pursuance of Sec. 395 of the Civil Practice Act, the Court properly admitted the roll in evidence.

I agree with the learned counsel for appellant, that in some respects the Court below was not sufficiently specific in its findings; indeed, that a part of the series are conclusions of law rather than findings of fact. But to make this objection available on appeal, application should have been made in the District Court, to correct or amend its findings. Nothing in the record appears showing that this was done. The point of objection cannot be raised for the first time in the appellate Court. (See Act regulating appeals, Sec. 2; Statutes of 1864–5, 394; *Whittemore* v. *Shiverick*, 3 Nev. 312; *Warner* v. *Holman*, 24 Cal. 228; *Cook*

v. *De La Guerra et al.*, Id. 241 ; *Bryan* v. *Maume et al.*, 28 Cal. 238 ; *Lyons* v. *Lembach*, 29 Cal. 139.)

Concerning the matter of the equalization of this assessment, whether the Board acted or not, does not appear ; and perhaps, in the absence of a contrary showing, the legal presumption would be —as counsel for respondent, on the argument, insists was the fact —that the Board did make such equalization. Yet, if the Board did not do so in this instance, the plaintiff was the only sufferer from such neglect, seeing that the assessment—within the limitation of the law—was based on a valuation of forty dollars per ton *less* than was shown by the verified statement of the mining superintendent. Two other questions are presented, which I shall briefly notice. These are—1st, that a quarterly assessment and collection of taxes on the proceeds of mines is unconstitutional ; and 2d, that the Act of April 2d, 1867, is not retrospective in its terms, and cannot have a retroactive operation. The point involved in the first of these inquiries was presented to this Court prior to my becoming a member of it, in the case of *The Mayor and Aldermen of the City of Virginia* v. *The Chollar-Potosi G. & S. M. Co.*, (3 Nev. 86) in which the principle was upheld by the unanimous opinion of the three Judges, that such a law was constitutional. The question was again presented since my accession to the Bench, in the recent case of *The State* v. *Kruttschnitt et als.*, wherein I concurred in the conclusions attained by the Chief Justice, upholding the validity of this feature of the law. It was with extreme reluctance that I came to this view of the question (not because the entire proceeds, less the sum allowed for reducing the ores, should not be assessed and collected, but that such assessment and collection should, as upon other species of property, be annual, and not quarterly). But as the Court, in the case above cited, had ruled upon the question and sustained the law, I did not feel at liberty, on a mere doubtful question, to even suggest the hesitation I felt in concurring with the opinion of my associates.

Also, in respect to the last point—the retroactive operation of the law—my impressions, not amounting to an absolute conviction —are adverse to the views taken of it in the preceding opinion ; but these being merely matters of doubt, I am indisposed to disturb the

principle, as established by my associates in a former case—that of *The State* v. *Eastabrook* (3 Nev. 173).

For the reasons herein given, I concur in affirming the judgment of the District Court.