W. H. JOHNSON, Appellee, v. E. F. MYER et al., Appellees;
JESSE R. MCKENNEY et al., Appellants.

**MORTGAGES:** Release and Reissuance—Priority.  A real estate mort-
1  gage holder who causes a full and complete release and satisfaction
of his recorded and unsatisfied mortgage to be entered, and causes
a new note and mortgage of the same tenor and amount, and for
the same debt, to be executed and recorded, and does so for the
sole purpose of removing his mortgage from the position of an
apparent *first* lien to the position of a *second* lien (as originally in-
tended), does not thereby displace the priority of his lien as *regards
an admitted third mortgage lien holder.*

**BILLS AND NOTES:** Payment and Discharge—Intention.  A plea that
2  a note and mortgage had been satisfied and discharged is not sustained
by proof that, under an arrangement between the mortgagor, mort-
gagee, and a third party, the mortgagee, *in order to pay his own debt
to the mortgagor,* indorsed the note and mortgage to said third party
for value, and that the value received for the note was placed to the
credit of the mortgagor.

**ALTERATION OF INSTRUMENTS:** Who May Plead.  The defense of
3  material alteration in a promissory note is not available to one who is
an entire stranger to the note.

*Appeal from Harrison District Court.*—J. B. ROCKAFELLOW,
Judge.

MAY 6, 1924.

ACTION to foreclose a mortgage upon real estate.  After
decree, a defendant in default asked, by petition, that the de-
fault and decree be set aside; and intervener moved for a new
trial.  The opinion states the facts.  From a decree denying the
petition and motion, the defendant McKenney and intervener
appeal.—*Affirmed.*

*Roadifer & Burbridge,* for appellants.

*Bolter & Murray,* for appellee.

VERMILION, J.—This controversy grows out of a somewhat

complicated series of transactions.  The history of the whole matter, as we gather it from the record, is as follows:

1. MORTGAGES: release and reissuance: priority.

Prior to March 1, 1920, E. J. Graham was the owner of a tract of land of some 200 acres in Harrison County, which he had entered into a contract to sell to E. F. Myer.  Myer in turn had contracted to sell the land to Z. J. Berch.  Graham also had a contract with Myer to purchase of the latter a half interest in another tract of land, known as the Goodwin farm.  It was contemplated that a first mortgage for $15,000 should be put upon the land sold by Graham to Myer, that Myer should give Graham a second mortgage for $14,500, and that this latter mortgage should be used in paying Myer for the half interest in the Goodwin farm.  On March 1, 1920, Graham and Myer, and perhaps Berch, met at a bank in Logan, of which D. E. Cottrell was cashier, to carry out these contracts.  At that time Graham and wife acknowledged a deed dated February 10th, conveying the 200 acres of land to Myer, and Myer and wife executed a mortgage thereon, securing their note for $14,500 to Graham.  This mortgage was filed for record on March 2d.  Graham, by indorsement on the note and interest coupons, assigned and transferred the note and mortgage in blank, and they were by Myer or Graham turned over to Cottrell, as the agent of plaintiff.  The plaintiff paid $13,000 therefor, the money going to Myer, or to the payment of a debt due from Myer to Cottrell or the bank.  The difference between the amount paid by plaintiff and the face of the note was a discount to make the paper pay 8 per cent interest to plaintiff.  By this transaction, $14,500 of Graham's indebtedness to Myer for the Goodwin farm was paid.  The note and mortgage were left in the possession of Cottrell, as plaintiff's agent.  On the same day, Myer and wife acknowledged a conveyance of the 200 acres to Berch.  This conveyance was dated February 10, 1920.

On March 2d, Berch and wife executed a mortgage for $6,000 to Myer, containing a covenant that the premises were free from incumbrances, except a mortgage for $37,500.  This mortgage was filed for record on March 2d.  It is agreed that this mortgage contains an erroneous description, in that the township is given as 79, when in fact the land in controversy

is in Township 78. Berch and wife also executed a mortgage dated March 1st, and filed for record March 2d, for $2,000, to Myer, containing a covenant that the premises were free from incumbrances except a mortgage of $43,500. It is agreed that this mortgage contains the same erroneous description as in the one last mentioned. This mortgage was assigned to the defendant McKenney, and is the one under which he now claims.

On March 7th, Berch and wife executed a mortgage on the land in controversy to Myer for $6,000, containing a covenant that the premises were free of incumbrances, except a mortgage for $37,500. It was filed for record March 12th. This mortgage is now owned by the intervener, Graves, and, we infer, was executed to correct the misdescription in the other $6,000 mortgage. On March 7th, Berch and wife executed a mortgage to Myer on the same land for $2,000, containing a covenant that the premises were free from incumbrances, except a mortgage for $43,500. This we also understand was for the purpose of correcting the mistake in the former $2,000 mortgage held by the defendant McKenney, but it never came into his possession.

A few days after March 1st, Cottrell told Graham that the $14,500 mortgage had been filed ahead of the $15,000 mortgage that was to have been a first lien, and that it would be necessary to make out new papers. He procured Graham to indorse a blank note and coupons, which he said he would have Myer sign, and asked him to release the $14,500 mortgage of record. Graham indorsed a blank note and coupons, and on March 24, 1920, executed a release on the margin of the record of the mortgage. On March 7th, at the request of Cottrell, Berch and wife signed the note and coupons last indorsed by Graham, which had been filled out for $14,500 and interest, and with the name of Graham as payee, and executed a mortgage on the land securing them. This mortgage was filed for record March 12th, before the $6,000 mortgage held by the intervener, and it and the note were left with Cottrell. Sometime thereafter, Berch complained to Cottrell that there were two mortgages for $14,500 against him, and Cottrell stamped "paid" and gave him a note and mortgage for that amount, which he took, without ascertaining which ones they were. The note and mortgage so given him were the ones executed by him.

In May, 1922, plaintiff commenced this action against Myer and wife, Berch and wife, Graham, and McKenney.  The petition set out the note and coupons executed by Myer and wife, and alleged that, to secure the payment thereof, Berch and wife executed the mortgage made by them on March 7, 1920.  It was alleged that plaintiff had elected to declare the debt due, under the terms of the note and mortgage, for a default in the payment of interest, and that the note and mortgage were the property of plaintiff.  The prayer asked judgment against Myer and wife, Berch and wife, and Graham, the foreclosure of the mortgage, and the appointment of a receiver.  Graham appeared, and filed a demurrer.  Myer and wife, Berch and wife, and McKenney did not appear, and default was entered as to them.  Graves filed a petition of intervention, in which he alleged his ownership of notes secured by a mortgage on the same land, which he alleged was taken subject to plaintiff's said mortgage; that he had commenced an action to foreclose his mortgage; that the security was insufficient; and that the mortgagors were insolvent.  A stipulation was entered into between counsel for plaintiff and Graves as to the appointment of a receiver, and on June 7, 1922, the plaintiff took personal judgment against Myer and Berch and their wives for the amount due on the notes sued on, and a decree of foreclosure of the mortgage set up in the petition, in which it was found that the rights of the intervener were subject to the rights of plaintiff, and all interest and equity of the defendant McKenney and the intervener, Graves, were barred and foreclosed, except such rights of redemption as were allowed by law.  The decree also provided for the appointment of a receiver, in accordance with the stipulation of plaintiff and intervener.  The cause was continued as to Graham.

Thereafter, the intervener, Graves, filed a petition for a new trial, and the defendant McKenney filed a motion to set aside the judgment and decree against him, accompanied by an answer and an affidavit of merits.

The claims of the intervener and McKenney in their attack upon the decree are, in substance, that the notes sued on are not secured by the mortgage foreclosed; that the mortgage securing the notes sued on was released of record, and that the liens of their respective mortgages are prior to that of the mortgage fore-

closed; that the notes sued on, being those given by Myer to
Graham, were paid by Myer to Graham in the settlement for
the Goodwin farm; that the mortgage declared upon and the
notes given by Berch were returned to Berch, marked ''can-
celed,'' and satisfied, and were never the property of plaintiff.
It is alleged that these facts were known to plaintiff and un-
known to the intervener and the defendant McKenney, and that
plaintiff practiced a fraud upon the court in concealing them
from the court and obtaining the decree. On the part of the
intervener, it is further alleged that the decree adjudging his
mortgage to be inferior to the mortgage foreclosed was fraudu-
lently procured, in that his attorney was told by counsel for
plaintiff that the only part of the decree that affected intervener
was the clause with respect to the appointment of a receiver.
On behalf of the defendant McKenney, it is further alleged that
the petition did not entitle plaintiff to the relief given in the
decree, for the reasons heretofore set out, and that he assumed
that no relief would be granted to which the allegations of the
petition did not entitle him. The court below denied the peti-
tion for a new trial and the motion to set aside the decree, and
the intervener and McKenney appeal.

There is no claim of fraud in the original transaction, and
no serious dispute as to the facts as above set out. It is agreed
that the $15,000 mortgage is the first lien, although it appears
to have been executed by Berch and wife at a date prior to the
actual execution and delivery of the deed to him by Myer. We
think it is plain that it was the intention and understanding of
all the parties that the $14,500 should be secured by the second
lien, and that the mortgages held by the defendant McKenney
and the intervener, Graves, were to be junior to it. The $14,500
represented a portion of the purchase price to be paid by Myer
to Graham, and was originally secured by a mortgage executed
by Myer, while the latter mortgages appear to have represented
part of the purchase price paid by Berch to Myer, and were exe-
cuted by Berch after he acquired the title from Myer. McKen-
ney and Graves are not shown to have been parties to the trans-
action at the bank or to the giving of the note and mortgage for
$14,500 by Berch, to take the place of the ones previously execut-
ed by Myer for that amount, and it is not shown when they

acquired the mortgages under which they claim; but these mortgages both show upon their face that they are subject to prior mortgages in excess of the total of the $15,000 and $14,500 mortgages. The defendant McKenney admits in his affidavit of merits that he knew that the Myer mortgage had been executed prior to his mortgage, and supposed that the plaintiff was establishing the lien of a superior mortgage; that he consulted an attorney, and was advised that he had no defense. He claims, it is true, that both he and his attorney were then ignorant of the fact that the mortgage set up in the petition was the Berch mortgage. The allegations of the petition advised him of that fact, but, in any event, his mistake in that respect goes only to the question of his diligence. The material thing here is that he knew that his mortgage was junior to a mortgage for $14,500. The intervener, Graves, admitted in his petition of intervention that his mortgage was taken subject to that of plaintiff. In his motion for a new trial, he too claims to have been ignorant of the facts; and he now relies upon the release of the Myer mortgage, but does not claim that the lien of the latter was not prior to his mortgage.

There can be no doubt that Berch was to take the land subject to a second mortgage of $14,500, and that plaintiff bought such a mortgage and paid $13,000 for it. It is equally plain that Berch never in any way paid the amount of this lien, and that plaintiff never received any amount in payment of such a mortgage. Berch, as has been said, made default, and he testified on the trial that he knew, at the time suit was brought, that there was a $14,500 mortgage on the land, and that the plaintiff had bought it; that he had never paid it, and had no defense to it.

It is the claim of appellants that the debt of $14,500 owed by Myer to Graham, which was represented by the note and mortgage for that amount given by Myer to Graham, was paid by Myer in the settlement for the Goodwin farm purchased by Graham from Myer, and that the note and mortgage were delivered to Myer. It is clear that Graham did make payment for the Goodwin farm to that extent, by surrendering the note and mortgage, but it is equally clear, we think, that this was done, not by surrendering them to Myer and extinguishing the debt, but by transferring

2. BILLS AND
NOTES: payment
and discharge:
intention.

them to plaintiff in consideration of the $13,000 furnished by the latter, through Cottrell, his agent, for the benefit of Myer. The manual handling of the instruments themselves is not conclusive. Graham, by an indorsement in blank on the note, transferred the note and mortgage, and they were delivered to plaintiff's agent; and it is immaterial whether the papers were actually handed to Cottrell by Myer or Graham. The title and ownership passed from Graham to plaintiff by the indorsement and delivery to Cottrell, in accordance with the intention of the parties. Nor is it material that the amount which plaintiff paid for the note passed directly from plaintiff's agent to Myer, or to the payment of his obligation. The effect of the transaction was that Graham, holding Myer's note and mortgage for $14,500, and being indebted to Myer in a like amount for the Goodwin land, sold the note and mortgage to plaintiff for $13,000, with which he paid his debt to Myer, the latter suffering the loss of the discount exacted by plaintiff. The transaction was primarily for Myer's benefit, and in accordance with the intention of all the parties to it. The plaintiff certainly did not advance $13,000 for a mortgage that was intended to be satisfied. The law will look to the intention of the parties and the interest of the plaintiff, in order to determine whether the mortgage is to be regarded as paid and canceled, or as subsisting as a lien for the benefit of plaintiff. *Weidner v. Thompson*, 69 Iowa 36; *Watson v. Bowman*, 142 Iowa 528; *National Life Ins. Co. v. Ayres*, 111 Iowa 200; *Carr v. Chicago Bond & Sur. Co.*, 190 Iowa 1320.

The mortgage given by Myer was canceled of record, and the new note and mortgage executed by Berch were taken for the purpose merely of permitting the $15,000 mortgage to appear upon the record as a first mortgage, and not for the purpose of releasing the security for the $14,500 debt. There is no claim that the debt was paid, otherwise than in the original transaction, as has been noted. It is clear that both mortgages were intended to secure the same debt. In the absence of an intentional release of the security, the lien of a mortgage continues until the debt is paid. The execution of the Berch mortgage and the subsequent cancellation of the one given by Myer did not, under the circumstances, operate to give priority to the mortgages held by McKenney and the intervener. *Weidner v. Thompson*,

supra; *Thorpe Bros. v. Durbon,* 45 Iowa 192; *St. Croix Lbr. Co. v. Davis,* 105 Iowa 27; *Packard v. Kingman,* 11 Iowa 219; *Cherry v. Welsher,* 195 Iowa 640; *Heively v. Matteson,* 54 Iowa 505; *Stanbrough v. Daniels,* 88 Iowa 314; *Port v. Robbins,* 35 Iowa 208.

The cancellation of the Myer mortgage of record was not intended to release plaintiff's lien upon the land. The same thing must be said of the surrender of the Berch mortgage to him. That appears to have been a mistake on the part of Cottrell. There is no claim that Berch had paid it and was entitled to it for that reason. It was clearly not an intentional release of plaintiff's lien.

The plaintiff's petition did not, it must be conceded, state the facts, as disclosed by the evidence. It declared upon the note executed by Myer, and alleged that the mortgage given by Berch was given to secure that note. In a sense, this was true: the mortgage was given to secure the debt evidenced by the Myer note. We do not have to do here with the right of either Myer or Berch. They both made default, and allowed judgment to go against them, and do not question the judgment. The only claim adverse to the defendant McKenney was that whatever lien he had was junior and inferior to that of plaintiff. That this is the fact is clearly established by the evidence. The plaintiff had a lien upon the land to secure the payment of the note sued on, prior and superior to any claim of McKenney's, and never intentionally released it. It thus clearly appearing that McKenney's lien was, in fact, inferior to that of plaintiff, no abuse of discretion on the part of the trial court in refusing to set aside the default and decree as to him is shown.

The same thing is true as to the intervener, Graves. So far as the pleadings are concerned, in the petition of intervention it was admitted that his mortgage was subject to plaintiff's. This fully warranted the decree as against him.

By amendments to the petition for a new trial and to the motion to set aside the decree, it is alleged that the note sued on has been materially altered since its execution, in that the words "without recourse" in Graham's indorsement have been erased, and the words "payment guaranteed" written in. It has been held that a

**3. ALTERATION OF INSTRUMENTS: who may plead.**

material alteration in the assignment or indorsement of an instrument does not affect the claim of the assignee or indorsee on the instrument itself, against the maker. 2 Corpus Juris 1188, and authorities there cited. The makers of the note are not complaining of the alteration, nor is any question that Graham, the person directly affected, might raise, now before us. The appellants are not parties to the note, and such a defense is not available to them. *Ralston Sav. Bank v. Fisher,* 165 Iowa 680.

We reach the conclusion that appellants have no valid defense to plaintiff's claim of a lien prior and superior to their respective mortgages. It therefore becomes unnecessary to consider the other questions presented.

The decree is—*Affirmed.*

ARTHUR, C. J., STEVENS and DE GRAFF, JJ., concur.