HENRY WINKER, Appellee, v. J. J. TIEFENTHALER et al., Appellants.

No. 44265.

. MAY 10, 1938.

Kline & Neu and F. H. Cooney, for appellee.

Salinger, Reynolds & Meyers and Lee, Robb & Sifford, for Emma Tiefenthaler, trustee, and Emma and Margaret Tiefenthaler, individually, appellants.

RICHARDS, J.—In 1920 plaintiff sold and conveyed to defendant J. J. Tiefenthaler a farm of 160 acres situated in Carroll County. As a part of the transaction Tiefenthaler and wife executed to plaintiff a mortgage on this land securing a portion of the purchase price. In 1925 a renewal note and a new mort-

gage securing same were made to plaintiff by the Tiefenthalers. In this mortgage made in 1925 the description of a certain 80-acre tract that was a part of this 160-acre farm was omitted, and there was included the description of an 80-acre tract in which none of the parties ever had any title or interest. In 1932 there was a decree of foreclosure of the mortgage made in 1925. On May 21, 1932, pursuant to the decree, there was special execution sale. In these foreclosure proceedings, including the sale, the land was described as in the 1925 mortgage. On June 27, 1932, defendant J. J. Tiefenthaler and wife executed to Emma Tiefenthaler, trustee, a mortgage upon the 80-acre tract, the description of which was omitted from the 1925 mortgage. The mortgagee was designated as trustee because, according to appellants' contention, the mortgage was to secure notes held by both Emma Tiefenthaler and Margaret Tiefenthaler in their individual capacities. On April 2, 1935, plaintiff filed a supplemental petition in equity, to which J. J. Tiefenthaler and wife, Emma Tiefenthaler, trustee, and Emma Tiefenthaler and Margaret Tiefenthaler, were made defendants. Therein, as against all the defendants, plaintiff sought reformation of the description of the land as found in the 1925 mortgage, in such manner as to include in said description all of the 160 acres correctly described in the original mortgage executed in 1920, and prayed that the mortgage so reformed be foreclosed, and that the prior foreclosure proceedings be set aside. As to defendants Emma Tiefenthaler, trustee, and Emma Tiefenthaler and Margaret Tiefenthaler, plaintiff alleged that the mortgage made to Emma Tiefenthaler, trustee, was without consideration, fraudulent, and void, and it was prayed that plaintiff's mortgage be foreclosed also as to them. Emma Tiefenthaler, trustee, and she and Margaret Tiefenthaler, individually, filed answer alleging that their mortgage was a valid first mortgage lien. They also set out several other matters as affirmative defenses. These issues were tried on their merits. The district court found for the plaintiff, reformed the mortgage as prayed, set aside the partial satisfaction entered at the time of the special execution sale on May 21, 1932, directed sale of the premises under special execution, found that the mortgage made to Emma Tiefenthaler, trustee, was fraudulent and void, and decreed that it be set aside and held for naught as against the plaintiff. From this

decree Emma Tiefenthaler, trustee, and Emma Tiefenthaler and Margaret Tiefenthaler, individually, have appealed.

The evidence established that the parties to the mortgage executed in 1925 intended that there should be incumbered thereby the 160-acre farm described in the 1920 mortgage, and establishes that the omission in the 1925 mortgage of the description of 80 acres of the 160 acres, and the including of 80 acres owned by a stranger, was unintentional and came about through mutual mistake of the parties to the instrument. The controversy before us is not whether the happening of this mutual mistake entitled plaintiff to a reformation of the mortgage in an action in equity. What is urged by appellants is that as against them the plaintiff has lost that equitable right for certain reasons which we proceed to set out.

■ One of appellants' alleged reasons, that as to them plaintiff may not now have reformation of his mortgage, rests on the claim that appellants' mortgage was supported by a good consideration, to wit, extension of time of payment of certain past-due notes, and that when the mortgage was taken appellants parted with this consideration without knowledge or notice of any equities the plaintiff may have had in the 80 acres on which appellants' mortgage was taken.

In considering the claim that there was such lack of knowledge or notice on part of appellants, it is noteworthy that it was defendant J. J. Tiefenthaler who first discovered the omission of the description of the 80 acres from the 1925 mortgage. The date of his discovery was a week or so prior to the special execution sale which was held May 21, 1932. Plaintiff acquired no knowledge of the omission in the description until later in 1932, sometime after the sale. Upon making the discovery and before the sale, Tiefenthaler employed an attorney who checked the records and verified the facts as to the omitted description. This attorney attended the sale, watching to see whether the land was sold as described in the 1925 mortgage. Tiefenthaler also procured two other persons to attend the sale, each taking with him a description of the land as found in the 1925 mortgage, for the purpose of establishing the fact that the land offered and sold by the sheriff was as described in that mortgage. The sheriff did offer and sell the land as so described. That fact was reported to Tiefenthaler and his said attorney on the same day, by one of these men who had attended the sale at the pro-

curement of Tiefenthaler. In connection with the foregoing, it is not without significance that upon this same attorney a call was made by Emma Tiefenthaler, appellant, at the attorney's office in Wall Lake, a town situated at some distance from Breda, where Emma lived. This call was made a week or two after the mistake in the mortgage was discovered, and had been verified by this attorney. Upon the trial this attorney testified that Emma's purpose in calling on him was to consult concerning some notes held by herself and Margaret Tiefenthaler against J. J. Tiefenthaler. These were the old notes, renewals of which appellants' mortgage purports to secure. This attorney also testified that he told Emma that, as he was acting as attorney for her brother, J. J. Tiefenthaler, she should have another attorney to represent her. Thereupon, this attorney took Emma to the town of Carroll, and into the office of a firm of attorneys. All that then occurred is not shown in the record, but it does appear that the attorneys to whom Emma Tiefenthaler was taken in Carroll were there told by the attorney who brought Emma to their office that the only thing that J. J. Tiefenthaler could do was to give a mortgage on the 80 acres. We infer from the record that at the time of all these occurrences it was in Emma's mind that a mortgage was to be made for herself and Margaret. Though the Carroll attorneys appear to have collaborated somewhat in the common purpose that the 80 acres be mortgaged to appellants, it was the attorney who had been employed by J. J. Tiefenthaler who calculated the amount due on the old notes, drafted or procured the drafting of new notes and the mortgage upon the 80 acres, attended to the signing, and, when completed, placed the instruments in the hands of the attorneys in Carroll. The latter attorneys seem to have had but a pro forma connection with the transaction. They received the mortgage and notes and turned over the old notes. At this time J. J. Tiefenthaler and his wife were hopelessly insolvent. The old notes bore dates ranging from 1920 to 1927, were payable one year after their dates, excepting one in which no due date was specified, and were without indorsements, excepting of interest. The latest interest indorsement on any of the notes was dated March 1, 1930. The appellants claim that the consideration with which they parted as innocent incumbrancers was the extension of the time of payment of the indebtedness represented by these old notes.

All these activities on the part of appellants, commencing so promptly upon discovery by their brother, J. J. Tiefenthaler, of the error in plaintiff's mortgage, the first step taken being consultation with the attorney of J. J. Tiefenthaler who had checked wherein there was an omitted description, cannot be viewed in the same light as if these were things done by some person innocent of knowledge of what was in the background of the picture. For appellants were sisters of J. J. Tiefenthaler, unmarried, and living together in the same home. They knew of the transaction when their brother purchased this farm from plaintiff in 1920. One of them was present when the deed was written and transaction closed. They knew the farm. They frequently visited their brother who lived thereon. He visited them in their home in the nearby town of Breda. Their relations were friendly. Before the discovery of the erroneous description appellants knew that plaintiff was foreclosing or was about to foreclose a mortgage he held on this farm their brother owned. One of appellants admits that after the sale she knew the wrong land had been sold, but without revealing the source of her information. In that connection defendants' witness Polking, a cousin of appellants, and one of the men who attended the sale as already related, would not deny on cross-examination that he talked with both appellants concerning the sale. He said he might have done so. It was peculiarly within the knowledge of appellants whether this witness did impart to them his knowledge concerning the sale he attended, but they did not see fit to testify with reference thereto. J. J. Tiefenthaler, as appellants' witness, testified that there were no communications whatever between him and appellants with reference to giving them the mortgage; that appellants did not ask for a mortgage; that he did not inform them he would give one. According to the testimony of this witness, he "didn't aim to talk to them [appellants] about it", he "just left them to hunt an attorney to take care of it." This witness further stated that the person to whom he did talk about giving the mortgage was the attorney upon whom Emma Tiefenthaler called for consultation. As to whether the old notes represented an actual and honest indebtedness when the mortgage was given there is no testimony excepting that of J. J. Tiefenthaler. But it also appears that in previous credit statements made by him under oath this witness had failed to list any such indebtedness owing by him. It is also in

the record that appellants included no such notes for taxation purposes when they made their returns with respect to their other moneys and credits. The appellants were present at the trial of this case. Neither of them offered to testify in their own behalf. All that is in the record from their lips consists of a few questions and answers when plaintiff attempted to examine one of appellants as his own witness. The examination had not proceeded very far before it came to its finis with the following colloquy:

"The Court. Do you think this is making you sick? Do you think it is too much for you? A. It is—it is—it gets on my nerves."

This record leads naturally and fairly, and without necessity of detailed discussion, to the conclusion that, in a fraudulent manner, defendant J. J. Tiefenthaler was attempting to hinder and delay plaintiff and deprive him of the equitable right he had to reform the 1925 mortgage, and to the conclusion that appellants participated therein with such notice and knowledge of the plaintiff's rights, and of the fraud being attempted, that we are constrained to say that they were not innocent encumbrancers.

■ Courts of equity will reform contracts not only as between the parties, so as to carry their intentions, but as against subsequent purchasers with notice. Warburton v. Lauman, 2 G. Gr. 420; Phillips v. Blair, 38 Iowa 649; Burt Zaiser Co. v. Finnegan, 161 Iowa 631, 143 N. W. 486; Senneff v. Brackey, 165 Iowa 525, 146 N. W. 24, 1 A. L. R. 978. The trial court properly held against appellants upon their proposition that, as innocent encumbrancers for valuable consideration, they had rights that a reformation of plaintiff's mortgage could not affect.

■ Appellants also plead that plaintiff's cause of action was barred by the statute of limitations. As already related, plaintiff did not discover the mistake until some time subsequent to May 1932. The supplemental petition was filed within five years thereafter. It is true that the mutual mistake had been made in March 1925, but section 11010, Codes 1935 and 1931, provides that in actions for relief on the ground of mistake the cause of action shall not be deemed to have accrued until the mistake shall have been discovered by the party aggrieved. With respect to any constructive notice to plaintiff, it is held in Pels v. Stevens, 187 Iowa 443, 173 N. W. 56, that it is not the pur-

pose of the recording act to charge the immediate parties with constructive notice of the precise contents of the instrument they execute, but to notify subsequent purchasers and encumbrancers of the rights such instruments are intended to secure. The trial court correctly held that plaintiff's action was not barred.

 The clerk of the district court interpreted the nunc pro tunc order of May 24, 1932, as directing him to correct the land descriptions by erasures and interlineations in a portion of his records in the foreclosure proceedings, and he acted accordingly. It also appears from the county recorder's records that on May 27, 1932, the 1925 mortgage was re-recorded. In the recorder's record book the mortgage as re-recorded described the land as it was described in the 1920 mortgage. The clerk of the court testified that the erasures and corrections made by him in his records did not embrace any change in the land description in the mortgage itself. A firm of attorneys, Saul & Saul, had been attorneys for plaintiff in the foreclosure action. The recorder's fee book indicates that the re-recorded mortgage was received from "Saul" on May 27, and was returned to "Saul" on May 31, 1932. One of the members of this law firm who testified knew nothing of the re-recording or of any change in the mortgage. The other member of the firm was deceased long before the trial. Plaintiff was without knowledge of any change of the description in the mortgage, or of the re-recording, until 1936. The 1925 mortgage had been originally drafted in the law office of Saul & Saul. Upon this record appellants seek to avoid reformation of plaintiff's mortgage on the theory that there was a material alteration of the instrument which voided same. Although there was no alteration that was plaintiff's personal act, appellants urge that the necessary inference is that the deceased attorney altered the instrument, and that because he was plaintiff's attorney it was plaintiff's act.

The general rule is that an alteration made by a stranger will not invalidate an instrument, and that an alteration made by an agent will not void a contract, unless it be shown that the agent had express or implied authority so to do. Shenkberg Co. v. Porter, 137 Iowa 245, 114 N. W. 890; Mathias v. Leathers, 99 Iowa 18, 68 N. W. 449. There is also cited by appellee, upon the proposition that an attorney receiving a note to obtain judgment thereon has no implied authority to alter it, the case of

188

Lanum v. Patterson, 143 Ill. App. 244, and as recognizing the same rule, the case of State v. Manhattan Silver Min. Co., 4 Nev. 318.

In the instant case, however, the record is such that we are of the opinion that the services to perform which Saul & Saul had been employed by plaintiff had been fully performed and the employment terminated, at the time the description was changed by the·attorney, if it was he who made the attempted correction. For at that time all matters involved in the foreclosure case had been adjudicated, plaintiff's rights under the special execution had been realized by him by sale of the premises, and he had returned to Minnesota, his place of residing, whence he had come to attend the sale, apparently looking upon the litigation as closed. It is undisputed that the subsequent proceedings to procure the nunc pro tunc order were undertaken by Saul & Saul in the absence of and without consulting plaintiff, and wholly without his knowledge. We think the record fails to fairly show that the relation of client and attorney existed at the time it is claimed Saul changed the mortgage description. Appellants make no claim that there was any intentional fraud on part of the attorney, and appellee suggests that he must have construed the nunc pro tunc order as authorizing a correction by erasure and interlineation in the mortgage itself. We find no necessity for discussing this last suggestion. There is no sufficient showing that the acts of these attorneys, after their employment had been terminated, were plaintiff's acts.

■■■ There is an additional reason that the defense of alteration is not available to these appellants who were neither parties to the instrument nor injured by the alleged alteration. That is, a third person, not a party to the instrument, cannot avail himself of such an alteration as a defense for his wrongful or unauthorized act. Ralston Savings Bank v. Fisher, 165 Iowa 680, 147 N. W. 162, cited in Johnson v. Myer, 197 Iowa 1110, 198 N. W. 654. The appellants had not even purportedly acquired any interests in the land, at the time of the alleged alteration. They could have been detrimentally affected no more than any other stranger to the title. When subsequently they acquired their mortgage they had notice and knowledge that plaintiff had a superior equitable interest. They were not parties to the mortgage. J. J. Tiefenthaler, a party to the mortgage who might have raised the question, is not an appellant, nor is he an appel-

lee served with notice of this appeal. From a review of the entire record, the conclusion is that none of appellants' propositions can be sustained. The decree is affirmed. The motion to dismiss the appeal, submitted with the case, is loverruled.— Affirmed.

SAGER, ANDERSON, KINTZINGER, HAMILTON, MITCHELL, and DONEGAN, JJ., concur.