Tom Clingerman, appellee, v. Fred Koehler, Jr., et al., appellants.

No. 48790.

(Reported in 73 N.W.2d 185)

November 15, 1955.

Fairall & Kilbride, of Marshalltown, for appellants.

Pell & Tye, of Marshalltown, for appellee.

OLIVER, C. J.—This is a suit by Tom Clingerman against his two sons, Herndon and C. Lee Clingerman, and also against Fred Koehler, Jr., the grantor in a deed to plaintiff of a life estate in a lot with house in Marshalltown, Iowa, to reform the deed and quiet title to such property. Plaintiff pleaded his son Herndon fraudulently procured the execution by Koehler of a deed which did not convey to plaintiff the fee simple estate required by plaintiff's purchase contract with Koehler, but conveyed to plaintiff a life estate only, remainder to plaintiff's two sons, Herndon and C. Lee Clingerman. Defendant sons contended the estate conveyed to them by Koehler was a gift from plaintiff. Trial resulted in judgment reforming the deed as prayed and quieting the title in plaintiff. The two sons have appealed.

Plaintiff was 70 years of age at the time of the trial and was hard of hearing. He was a common laborer with little formal education and had difficulty reading an ordinary paper. There was evidence he was unable to read a letter he received. Plaintiff purchased the lot here in question from Koehler in 1930 for $75, payable at the rate of $3 and $5 per month. Upon the lot was a one-room house which plaintiff subsequently improved and enlarged and occupied as his home, until 1953. The contract was drawn on a printed form and provided for a deed to plaintiff upon payment of the purchase price. Although the payments were completed about 1932, plaintiff did not ask Koehler for a deed until December 1945.

On that occasion Herndon took plaintiff from Marshalltown to Koehler's home in State Center. There was evidence Herndon had been keeping certain papers for plaintiff, including the contract. Koehler was enfeebled by age, and had circulatory and heart ailments, defective hearing and sight. He testified plaintiff said he wanted his deed but did not ask that it be made out to his sons or that it convey to plaintiff a life estate only. Plaintiff testified to the same effect. Koehler told plaintiff to have E. E. Bachman, an attorney and abstracter in Marshalltown, prepare the deed. Koehler did not contact Bachman or give him any instructions as to the form of the deed. Plaintiff testified he was not well and asked Herndon to get the deed and keep it until he called for it, but did not authorize him to arrange for a deed which differed from the contract—"I supposed the boy was honest and he wouldn't go put it off somewhere."

Bachman testified defendant Herndon Clingerman came alone to his office with the original contract and said Koehler wanted Bachman to prepare the deed. Herndon told Bachman his father wanted the deed made out to convey a life estate to the father and the remainder to the two sons. He gave Bachman to understand there was grave doubt as to his father's ultimate health. Bachman prepared the deed as Herndon had instructed.

On December 19 Herndon drove to State Center alone, told Koehler Bachman had sent the deed for Koehler's signature and took Koehler to a bank where Koehler signed it and acknowledged its execution. Koehler did not intend to convey the property to anyone other than plaintiff and did not know the deed did not conform to the contract. He testified, "I didn't read it over good enough." Although he was named a defendant in this suit he made no defense and did not appeal from the judgment.

Herndon secured from Koehler and plaintiff, and delivered to Bachman, checks for Bachman's bill for the abstract of title, legal work and revenue stamps. However, Herndon did not show plaintiff the deed either before or after it was

executed. Herndon filed it for record December 31, 1945, and secured the recorded deed from the county recorder May 4, 1946. It was kept at his home, together with the abstract of title and other papers belonging to plaintiff.

Plaintiff testified he did not see the deed until after this suit was instituted. This was denied by Herndon, his wife, and their tenant. Their testimony, in the language of Herndon's wife, was that she read the deed to plaintiff about the last of May 1946 and plaintiff said it was all right. She testified plaintiff came to their home and handed her the original contract of sale; she asked him if he wanted to see the deed; he said, " 'it don't make any difference.' So I thought he should see it anyway so I went out and got it out of the trunk and brought it in and I said, 'Well, here it is. I will read it for you' " and she read aloud everything on both sides of the instrument, as they stood there, without giving plaintiff possession of it.

Appellants' story of how they acquired the property was that plaintiff, "always said it belonged to us boys when he was through with it"; their mother "always said that"; shortly before her death in May 1945 plaintiff said: "Your mother always wanted me to give you boys the place after she was gone"; and according to Herndon, after her death, "it was all settled, we figured." Herndon testified that in December 1945 he learned plaintiff planned another marriage, he made no effort to stop it but asked for the property, which plaintiff said they could still have. Herndon told plaintiff to "go over to State Center and tell Mr. Koehler that"; plaintiff went there and told Koehler he wanted his sons to have that place and all he wanted was a place to live in the rest of his life; as they were returning to Marshalltown he said to Herndon, "* * * 'take care of it for me.' " Plaintiff denied making any such statements concerning the property, and Koehler corroborated his testimony as to what Koehler was told the day Herndon and plaintiff called upon him.

After 1945 plaintiff enlarged the house to five rooms and made other substantial improvements. Herndon testified he asked plaintiff why the second wife should have a better place

to live than the first. He made no complaint that plaintiff was improving property belonging to his brother and him.

In August 1949 plaintiff secured insurance upon the house. The agent, Forrest Reed, asked to see the deed and was informed it was at Herndon's home. Reed went there and inspected the deed September 9. The next day he placed an endorsement upon the policy which recited the title was in Herndon and C. Lee Clingerman subject to the right of plaintiff to use it during his life. A renewal policy issued in 1952 contained the same endorsement. Plaintiff testified: "I didn't know that Herndon and Lee's names were on the deed before that." Some time later, "I talked to him (Herndon) about it (the deed), that I wanted it. Well, he just told me it was put away." Herndon had required Reed to send him a duplicate copy of the insurance policy and a copy of Reed's letter of September 10 to plaintiff, transmitting the original policy and the endorsement, because, said he, he was one of the owners. However, plaintiff paid all the insurance premiums. That Herndon's desire for the property was not sentimental is indicated by his recitation of a conversation some time prior to the trial, in which plaintiff suggested that they sell the place and end the controversy and he replied: "Sell it as long as we get our money, our share, it is immaterial to me." Appellants do not contend either of them ever assisted in caring for the property or incurred expense in connection with it.

I. Appellants' brief states the appeal is based largely upon questions of fact only. They point out that the burden of proof of fraud was upon plaintiff and that to invalidate for fraud an instrument involving title to real estate the proof thereof must be clear, satisfactory and convincing. Dallas Real Estate Co. v. Groves, 228 Iowa 1232, 1239, 289 N.W. 900, 292 N.W. 152; Harvey v. Phillips, 193 Iowa 231, 233, 186 N.W. 910.

However, much of the proof in the case at bar is conclusive. Here two instruments are involved: (1) the admittedly valid 1930 contract for deed, fully performed by plaintiff, which conveyed to him the equitable title and the right to the legal title to the real estate, of which appellants had notice, and (2) the 1945 deed from Koehler conveying part of the

110

legal title to appellants, contrary to provisions of the contract. These matters were established without question. Appellants do not assert their claim is evidenced by any writing executed by plaintiff. Nor do they contend it was supported by any consideration. They contend they took, under Koehler's deed, by gift from plaintiff, the remainder interest in the property.

To be valid, gifts inter vivos must go into immediate and present effect and must be fully executed. A mere promise to make a gift in the future is unenforceable. Casady v. Casady, 184 Iowa 1241, 1248, 169 N.W. 683; Lynch v. Lynch, 239 Iowa 1245, 1253, 34 N.W.2d 485, 489; 38 C. J. S., Gifts, sections 16 and 41. See also West's Iowa Digest, Gifts, sections 25 and 49(4).

Wilson v. Wilson, 99 Iowa 688, 693, 68 N.W. 910, 911, quotes: " 'Parental declarations are often made with reference to experimental arrangements, or testamentary intentions, for the benefit of a son, which are sadly misapplied when brought into court as evidential of a contract of sale.' " The court then states: "The same may be said, we think, as to parental declarations as evidence of a gift."

Hence, declarations of their parents that appellants would get the property after the death of one parent or the other, even though definite, would not have established a gift of the property from plaintiff to appellants. The basic issue of fact here is whether the procuring by Herndon of the preparation and execution of the nonconforming deed was a fraud upon the rights of plaintiff. The trial court found such fraud was established.

This finding is supported by the evidence. Defendant Koehler testified plaintiff merely requested a deed to himself under the contract, and Koehler intended to give him such a deed. The record shows Herndon procured the deed to appellants by deceiving plaintiff, Mr. Bachman and defendant Koehler. As pointed out by the trial court Herndon's subsequent concealment from plaintiff of the deed and its contents is a circumstance tending to prove the fraud charged.

The story that six months after the deed was executed Herndon's wife decided plaintiff should "see" it and proceeded

to read it to him is not reasonable. Little weight was given it by the trial court. Plaintiff testified his request, some years later, to see the deed was met by the answer, "it was put away", and he did not learn its nature until 1949. A like request subsequently made by plaintiff's attorney was refused. Even after this suit was started Herndon in answer to interrogatories propounded to him denied he had possession of the deed. As a witness much of his testimony was evasive and conflicting.

II. Appellants contend the action was barred by subsection 5 of section 614.1, Code of Iowa, 1950 (1954) which limits to five years the bringing of actions for relief on the ground of fraud, etc. With this contention we disagree. Code section 614.4 provides the cause of action shall not be deemed to have accrued until the fraud shall have been discovered by the party aggrieved. The record here shows active fraudulent concealment from plaintiff by appellants, of the fraud, of which the first information came to him in September 1949 and that the suit was instituted less than five years thereafter. Prior to that time he had no knowledge or notice which would lead a man of reasonable prudence to make inquiries which would disclose the fraud. Buhman v. Oltrogge, 229 Iowa 449, 294 N.W. 788.

Nor do we agree the constructive notice imparted by the recording of the deed put into operation against plaintiff the statute of limitations. Plaintiff has been in possession of the lot at all times since he purchased it under the contract in 1930. He was not required to watch the records to safeguard his position. Connolly v. Des Moines & Central Iowa Ry. Co., 246 Iowa 874, 890, 68 N.W.2d 320, 330; Boehnke v. Roenfanz, 246 Iowa 240, 247, 67 N.W.2d 585, 591, and citations.

The trial court saw and heard the witnesses. Our consideration of the record, giving substantial weight to the findings of fact of the trial court, requires the conclusion the proof of the essential allegations of plaintiff's petition is clear, satisfactory and convincing and the judgment of that court is correct.—Affirmed.

All JUSTICES concur except PETERSON, J., who takes no part.