Irene Anderson, appellant, v. Elsie King, appellee.

No. 49608.

(Reported in 93 N.W.2d 762)

December 16, 1958.

Bray, Carson & McCoy, of Oskaloosa, for appellant.

Tomasek & Vogel, of Grinnell, for appellee.

WENNERSTRUM, J.—Plaintiff's action in equity against the defendant sought the reformation of a deed claiming it was the result of alleged legal fraud, accident or mutual mistake. Plaintiff claimed a one-third interest in an 80-acre improved farm and sought partition of it. The defendant denied the allegations of

plaintiff relative to fraud, accident or mistake and contended any interest the plaintiff may have had, if any, at any time, is now barred by laches, the statute of limitations, and by ratification on behalf of the plaintiff. The trial court held the action was barred by both the statute of limitations and laches. By reason of this holding it made no determination relative to the claim of fraud, accident or mutual mistake in connection with the execution and delivery of the deed to which reference will be hereinafter made. The trial court dismissed the plaintiff's action and entered judgment against her for costs. She has appealed.

The plaintiff is the daughter and only child of J. R. King and Jessie King. They are now both deceased. On September 7, 1939, J. R. King and Jessie King, then husband and wife, entered into a written contract with one M. D. Curtis for the purchase of an improved 80-acre farm in Jasper County, Iowa. This contract shows it was entered into "* * * between M. D. Curtis of the County of Poweshiek and State of Iowa, party of the first part, and J. R. King and Jessie King, husband and wife, of the County of Poweshiek in the State of Iowa, party of the second part:". The contract further provided: "But if all said sums of money, interest and taxes are paid, as aforesaid, promptly at the time aforesaid, and all agreements on the part of the said party of the second part have been complied with, the party of the first part will, on receiving all said money and interest, and upon the surrender of the duplicate of this contract, execute and deliver or cause to be executed and delivered, to said party, his heirs or assigns, a good and sufficient warranty deed, conveying said premises in fee simple * * *."

The contract purchasers moved on the farm on or about March 1, 1940. The plaintiff-daughter resided with her parents on this farm until 1945 when she married Glenn Anderson. She and her husband first lived near Kellogg, Iowa, approximately five miles from the King farm. Later they moved to a farm near Grinnell, Iowa, which they operated until the spring of 1948. At that time they purchased a farm near Gilman, Iowa, approximately fifteen miles from the land in controversy. They were living there at the time of the trial. During the time since her

marriage and until her father's death the plaintiff periodically visited at the home of her father.

Sometime in January 1947 Jessie King suffered a stroke and became a patient in a hospital at Grinnell, Iowa, where she remained until March 30, 1947. On this latter date she was returned to the farm home where she remained for a period of time but later was taken to a hospital in Grinnell and subsequently to a nursing home in that city. She passed away in this home on August 7, 1947. She left no will and there was no administration of her estate. The record shows as a result of her stroke she had no control of her left side and it was impossible for her to talk or swallow. The trial court found the record did not disclose what her mental condition was during her last illness.

It is shown that as of March 1947 M. D. Curtis had been paid the balance due on the contract of purchase and by reason of that fact he and his wife on March 27, 1947, executed a warranty deed wherein the grantees were referred to as "J. R. King and Jessie King, husband and wife, or the survivor." This deed covered the farm property here involved and was made subject to the mortgage of record, "which grantee assumes and agrees to pay, with all interest." Following the death of Jessie King her husband continued to live on the farm. On July 21, 1948, he married Elsie Rollins, a widow. She is the defendant in the present action. On April 22, 1952, J. R. King and his then wife, Elsie M. King, executed a warranty deed covering the property here involved and wherein the grantees were referred to as "J. R. King and Elsie M. King, husband and wife, as joint tenants, with right of survivorship, and not as tenants in common." In the body of the deed the following is set out: "The purpose of this instrument is to constitute the grantees herein, the owners of said real estate as joint tenants, with right of survivorship, and not as tenants in common."

Following the marriage of J. R. King and Elsie King they resided on the farm property here involved and asserted all rights of ownership to it. The taxes were paid by them during this period and improvements were made on the home and other property incident to the farm operations. During this period the mortgage indebtedness which had been on this property and

as originally incurred by M. D. Curtis and Catherine Curtis was paid and a release was made of these mortgages. J. R. King passed away on May 1, 1957. He died intestate and no administration has been had of his estate.

The trial court found that since the time of the plaintiff's marriage she had lived within a reasonable distance of her father and the real estate involved in this litigation. It also found that at no time subsequent to the death of her mother and prior to the death of her father did she seek to exercise or make any claim to any rights of ownership in regard to the property here in controversy nor did she make any claim to any income therefrom. It is further shown that she did in no way contribute to the payment of the taxes, to the payment of any of the mortgage indebtedness or the cost of any improvements made on the farm property. The court further found that the first actual knowledge the plaintiff obtained of the deeds to which reference has been made was after the death of J. R. King.

It is the contention of the plaintiff in her petition that on the execution of the contract to purchase the property here in controversy J. R. King and Jessie King became the owners of the farm property as tenants in common, that they went into possession of it as such and so continued until the death of Jessie King. She further pleaded that on the death of her mother, J. R. King became the owner of one third of his deceased wife's one-half interest and the plaintiff became the owner of a two-thirds interest in her mother's claimed one-half interest by reason of being her only heir-at-law. Plaintiff further pleaded that on the death of her mother, J. R. King and she became the owners of the property here involved as tenants in common and J. R. King was resultantly the owner of an undivided two-thirds interest therein and the plaintiff became the owner of an undivided one-third interest in the property and said parties here referred to went into possession of the farm property as tenants in common.

Plaintiff, in her petition, further asserted, "* * * if the words 'in hand paid by J. R. King' and the words 'or the survivor' were inserted in said deed by design, it was a legal fraud on Jessie King; that if said words were not inserted in said deed by design, they were inserted therein by mistake of the scrive-

ner thereof; and that said words were inserted in said deed either by said fraud, or by accident, or through a mutual mistake." Plaintiff further averred that at the time J. R. King executed the deed conveying the real estate in question to himself and Elsie King, as joint tenants with right of survivorship and not as tenants in common, he, King, held only an undivided two-thirds interest in the real estate. It is contended the deed as executed by M. D. Curtis and his wife on March 27, 1947, should be reformed to comply with the contract of purchase originally entered into by the Curtises and J. R. King and Jessie King.

The defendant, Elsie King, denied the controversial issues as alleged in plaintiff's petition and specifically pleaded in her answer there is nothing in the original contract indicating whether the real estate was purchased by J. R. King and Jessie King as tenants in common or as joint tenants. Defendant further pleaded in her answer that the plaintiff, if she ever had any interest, is now barred by laches and the statute of limitations. She further asserted the plaintiff's failure to make any claim to the property prior to bringing this action constituted a ratification of the deed previously referred to and is a bar to its reformation.

By reason of the fact the trial court determined the plaintiff's action was barred by the statute of limitations we deem it advisable to give consideration to this question and issue and ascertain whether the court was justified in holding as it did.

Section 614.1, subdivision 5 thereof, Code of 1958, which has a bearing on the claims of the plaintiff, is as follows:

"Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared: * * *

"5. *Unwritten contracts — injuries to property — fraud — other actions.* Those founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years, * * *."

The trial court held the plaintiff's action was barred by reason of the fact her actions for relief on the ground of fraud must be brought within five years after the cause of action ac-

crues. It also held it considered "mistake" and "accident" as synonymous and under a claim of either fraud, mistake or accident an action is barred under the statute if not brought within five years.

I. There are distinguishing rules pertaining to whether the recording of a written instrument gives notice to all parties concerned as relates to fraud as between immediate parties to a transaction and those not so situated.

■ It is stated in Pels v. Stevens, 187 Iowa 443, 462, 173 N.W. 56, 63: "It is not the purpose of the recording act to charge the immediate parties with constructive notice of the precise contents of the instrument they execute, but to notify subsequent purchasers and incumbrancers of the rights such instruments are intended to secure."

■ Holdings of a similar nature to that of the Pels case are found in Winker v. Tiefenthaler, 225 Iowa 180, 186, 279 N.W. 436, and Wagner v. Wagner, 240 Iowa 1113, 1117, 38 N.W.2d 609, 611. In the case last-cited, it is held, "As a general rule the statute of limitations does not run against one in possession of land", citing 34 Am. Jur., Limitation of Actions, section 381, and Fulton v. McCullough, 232 Iowa 1220, 1226, 7 N.W.2d 910, 913. See also Clingerman v. Koehler, 247 Iowa 105, 111, 73 N.W.2d 185, and cases cited.

■ In the instant case the plaintiff was neither an immediate party to the original deed transaction nor was she at any time in possession of the real estate here involved. There is absolutely no proof she exerted any possessory control of any interest in the farm property along with her father following the death of her mother. By reason of the facts last-stated the plaintiff cannot bring herself within the holdings heretofore referred to and benefit thereby.

■ II. We must give consideration to the effect of the recording of the deed from the Curtises to J. R. King and Jessie King, his first wife. In Van Wechel v. Van Wechel, 178 Iowa 491, 496, 159 N.W. 1039, 1041, this court, in determining a case in part somewhat similar to the present one, stated:

"The 'discovery' of the fraud or wrong which will set the statute in motion does not necessarily mean actual and direct personal knowledge by the complaining party. It is sufficient if

such party has such knowledge or notice as would lead a man of reasonable prudence to make inquiries which would disclose the fraud. Piekenbrock v. Knoer, 136 Iowa 534, 538. This is especially true where the fraud, if any, is constructive only, and there is no showing that the party charged with the alleged wrong fraudulently concealed the same from the one aggrieved thereby. Gamet v. Haas, 165 Iowa 565; Cook v. Chicago, R. I. & P. R. Co., 81 Iowa 551; District Twp. v. French, 40 Iowa 601; Heath v. Elliott, 83 Iowa 357. And ordinarily, where the alleged wrong consists in making a conveyance or transfer of title to real estate, the record of such instrument and the constructive notice thereby imparted are held to charge all persons adversely affected thereby with knowledge thereof, and the period of limitation begins with such record. Mickel v. Walraven, 92 Iowa 423; Francis v. Wallace, 77 Iowa 373; Clark v. Van Loon, 108 Iowa 250, 253, and cases there cited."

In the case of Olson v. Larson, 233 Iowa 1032, 1034, 8 N.W.2d 697, 698, in dealing with a claimed fraudulent deed we stated: "It is settled in this state that due filing and recording of a fraudulent conveyance constitutes notice not only of the conveyance but of its fraudulent character."

See also Bishop v. Knowles, 53 Iowa 268, 272, 5 N.W. 139; Francis v. Wallace, 77 Iowa 373, 376, 42 N.W. 323; Murphy v. Hahn, 208 Iowa 698, 704, 223 N.W. 756.

If the original deed was fraudulent, a fact not borne out by the record, under the holdings herein the plaintiff had knowledge of the nature of the deed by reason of its recording, and consequently the statute of limitations began to run. See also Somers v. Spaulding, 229 Iowa 432, 434, 294 N.W. 610, 133 A. L. R. 1300, and cases cited.

III. It is our conclusion the original contract represented an intention of J. R. King and his first wife to acquire title as tenants in common. However, the contract "* * * in the absence of any showing to the contrary, must be found to have been merged in the deed." Gray v. Van Gordon, 187 Iowa 835, 838, 174 N.W. 588; McNair v. Sockriter, 199 Iowa 1176, 1185, 1186, 201 N.W. 102; Royal Union Life Ins. Co. v. Hughes, 205 Iowa 563, 566, 218 N.W. 251; Swensen v. Union Central Life Ins. Co., 225 Iowa 428, 433, 435, 280 N.W. 600. Under the record

as presented we have concluded there is no showing which would indicate the Kings did not change their minds and desired the deed executed as it was. At least, the contract was merged in the deed and as is held in several of the authorities cited the original contract became null and void.

IV. The burden was on the plaintiff to establish facts which she claims avoids the statute of limitations. City of Carroll v. Arts, 225 Iowa 487, 489, 280 N.W. 869, and cases cited. This she has failed to do. The record is devoid of any evidence of any statements made by J. R. King which would have lulled the plaintiff from making an investigation relative to the recording of any instrument pertaining to the land in question. The most that can be deduced from plaintiff's testimony is a possible surmise as to the father's intention. Such a conclusion does not constitute any degree of proof.

V. It is also apparent from the record the plaintiff was guilty of laches. From our review of the record we have concluded the plaintiff is barred by the statute of limitations and by laches. We, like the trial court, in the light of our holdings herein, do not find it necessary to pass upon the question whether there was any fraud, accident or mistake in connection with the Curtis deed. We find no basis for a reformation of the deed of which complaint is made and the trial court's decree is affirmed. —Affirmed.

All JUSTICES concur.